NO. COA13-672

NORTH CAROLINA COURT OF APPEALS

Filed: 18 March 2014

STATE OF NORTH CAROLINA

    v.

                                Lee County
                                Nos. 11 CRS 78
                                       11 CRS 277
                                       11 CRS 50049-58

EDWARD EARL[1] MULDER

Appeal by Defendant from judgments entered 15 October 2012 by Judge Carl R. Fox in Lee County Superior Court. Heard in the Court of Appeals 7 November 2013.

> *Attorney General Roy Cooper, by Special Deputy Attorney General Karen A. Blum, for the State.*

> *Appellate Defender Staples Hughes, by Assistant Appellate Defender Mary Cook, for Defendant.*

STEPHENS, Judge.

*Procedural History and Evidence*

Defendant began a dating relationship with Brenda Swann approximately seven years before the trial of this case. When the relationship ended, Swann obtained a Domestic Violence

---

[1] The transcript lists Defendant's middle name as "Everett." Relying on the judgments entered in the trial court, however, we use the middle name "Earl."

Protective Order ("DVPO") against Defendant. This appeal arises from the domestic disturbance and car chase that followed.

On 6 January 2011, around 7:00 p.m., Swann heard a loud noise outside her home. Swann's son went to the front door to investigate. From that vantage point, the son observed Defendant striking Swann's car with a hammer. Defendant was wearing a black ski mask, which was "kind of rolled up [and] pulled . . . over his head." The son confronted Defendant and asked him what he was doing. Without responding or releasing the hammer, Defendant began approaching the son. Concerned for his mother's safety, the son returned to the house and attempted to close the door. Defendant pushed back on the door, and the two began struggling. During the struggle, the son told Swann to call the police. The son eventually succeeded in closing the door, and Defendant left the premises. The police arrived two to three minutes later.

While police officers were speaking with Swann and her son, Sergeant Scott Norton was on nearby patrol. After learning about the disturbance, he observed Defendant's vehicle driving down the road. Norton activated his lights and began following the car. Defendant then turned his vehicle around, swerved into a yard, jumped over a curb, and accelerated away. According to

Norton, "[i]t was obvious that [Defendant] was running [and] wasn't going to surrender." Norton requested backup and continued pursuit. Defendant eventually stopped at the top of a bridge, leading Norton to believe that he was finished fleeing. When Norton opened his door, however, Defendant "accelerated, squealing tires," and left. Norton commented at trial that Defendant appeared to be "swerve[ing] . . . as if he was trying to hit [civilian cars]. . . . Just innocent people on the highway."

Other police cars joined in the chase and tried to "box in" Defendant. During the attempt, Defendant swerved toward Norton, missing him, and escaped. As the pursuit wore on, the vehicles reached speeds in excess of 100 miles per hour, and officers observed Defendant toss papers and other objects out the car window.[2] After a time, another officer drove down the road in the opposite direction of Defendant. Defendant then exited the road, veered off the right-hand shoulder, and overcorrected. Next, he went over to the left-hand side of the road, "slammed on the brakes," and came back across the road, heading toward Norton's vehicle.

---

[2] A black ski mask was later recovered from the area.

Instead of hitting Norton, Defendant's car "went into a ditch." Officers then tried to "box [Defendant] in" a second time. They were unsuccessful, and Defendant drove out of the ditch, "ramm[ing]" another officer's vehicle in the process. Worried that Defendant would cause injury or further damage to the other officer's car, Norton then used his own vehicle to "ram[ D]efendant's car in the driver's side door."

After striking Defendant's car, Norton exited his vehicle and approached Defendant. Norton had his gun out and told Defendant to raise his hands and turn off the car. In response, Defendant reached out the window, slapped Norton's pistol, and said "shoot me, mother[]fucker." Norton then reached into Defendant's car and attempted to pull him out. At the same time, Defendant "[shifted his car into] reverse and accelerate[d] while [Norton was] hanging in the driver's side window . . . ." The other officer was hanging in the passenger side window, and more officers began to approach from behind. Before Defendant was able to make contact with the approaching officers, the passenger-side officer reached inside Defendant's car, put it into park, and shut off the engine. Defendant remained "[u]ncooperative, belligerent, cussing at us, [and] trying to fight" as he was pulled from the vehicle and arrested.

Defendant was later indicted for (1) one count of failure to heed light or siren, (2) one count of first-degree burglary, (3) two counts of violating a DVPO, (4) one count of speeding, (5) one count of reckless driving to endanger, (6) one count of littering, (7) one count of failure to maintain lane control, (8) five counts of assault with a deadly weapon on a government officer ("AWDWOGO"), (9) one count of speeding to elude arrest with a motor vehicle,[3] (10) one count of injury to personal property, and (11) one count of breaking or entering. The case came on for trial beginning 8 October 2012.

On 15 October 2012, the jury found Defendant guilty on all counts except first-degree burglary. Instead of burglary, Defendant was found guilty of the lesser-included offense of misdemeanor breaking and entering. Afterward, the trial court imposed consecutive sentences of 15–18 months in prison for the first two counts of AWDWOGO; 19–23 months in prison for the next three counts of AWDWOGO; 6–8 months in prison for the consolidated offenses of speeding, reckless driving, speeding to

---

[3] The indictment refers to this charge as "FLEE/ELUDE ARREST WITH A MOTOR VEHICLE." The cited statute, however, describes the crime as "Speeding to elude arrest[.]" N.C. Gen. Stat. § 20-141.5 (2013). Thus, for purposes of consistency with the legislature, we refer to this charge as "speeding to elude arrest."

elude arrest, failure to heed light or siren, failure to maintain lane control, and littering; and 75 days in prison for the DVPO violations, the injury to personal property offense, and the breaking or entering offense. Defendant gave notice of appeal in open court.

*Discussion*

On appeal, Defendant argues that the trial court erred in failing to arrest judgment on the speeding and reckless driving convictions because each of those offenses is a lesser-included offense of felony speeding to elude arrest and, therefore, subjects Defendant to double jeopardy. Alternatively, Defendant argues that the speeding and reckless driving convictions must be vacated because the State failed to present sufficient evidence distinguishing them from the aggravating factors applied to enhance Defendant's speeding to elude arrest conviction from a misdemeanor to a felony. We arrest judgment on the speeding and reckless driving convictions and remand for re-sentencing.

*I. Appellate Review*

As a preliminary matter, we address the State's argument that Defendant is barred from seeking to arrest judgment on double jeopardy grounds because he admittedly failed to raise

the double jeopardy issue at trial. In response, Defendant contends (1) that a motion to arrest judgment based on a fatal error or defect in the record may be raised for the first time on appeal or, in the alternative, (2) that this Court should invoke Rule 2 of the North Carolina Rules of Appellate Procedure and review this issue in order to prevent manifest injustice. We hold that Defendant waived his right to appellate review by failing to raise the double jeopardy issue at trial, but elect to review the issue nonetheless under Rule 2 of the North Carolina Rules of Appellate Procedure.

*A. Arrest of Judgment*

As a general rule, "constitutional questions not raised and passed on by the trial court will not ordinarily be considered on appeal." *State v. Davis*, 364 N.C. 297, 301, 698 S.E.2d 65, 67 (2010) (citations, internal quotation marks, and brackets omitted) (declining to review the defendant's double jeopardy argument because he failed to raise it at trial). Furthermore, our appellate rules require a party to make "a timely request, objection, or motion [at trial], stating the specific grounds for the [desired] ruling" in order to preserve an issue for appellate review. N.C.R. App. P. 10(a)(1).

Despite this general rule, Defendant contends that we should review his argument seeking arrest of judgment on double jeopardy grounds pursuant to our Supreme Court's opinion in *State v. Sellers*, 273 N.C. 641, 645, 161 S.E.2d 15, 18 (1968) and our opinion in *State v. Wilson*, 128 N.C. App. 688, 691, 497 S.E.2d 416, 419 (1998) (citing *Sellers*). We disagree.

In *Sellers*, our Supreme Court stated that

> [a] motion in arrest of judgment predicated upon some fatal error or defect appearing on the face of the record proper may be made at any time in any court having jurisdiction of the matter. This is true even though the motion is made for the first time . . . at the hearing of the appeal from the judgment of the Superior Court.

*Sellers*, 273 N.C. at 645, 161 S.E.2d at 18. Applying *Sellers*, Defendant contends that the alleged double jeopardy problem in this case constitutes a fatal defect on the face of the record and, therefore, may be raised for the first time on appeal. This is incorrect.

A double jeopardy problem is *distinct* from a "fatal flaw which appears on the face of the record." *See State v. Pakulski*, 326 N.C. 434, 439, 390 S.E.2d 129, 132 (1990). In *Pakulski*, our Supreme Court confirmed that a fatal flaw on the face of the record is akin to a "substantive error on the indictment," which is separate and apart from a double jeopardy issue. *See id.*

("When judgment is arrested because of a fatal flaw which appears on the face of the record, such as a substantive error on the indictment, the verdict itself is vacated . . . . [W]hen judgment is arrested on predicate felonies in a felony murder case to avoid a double jeopardy problem, [however,] the guilty verdicts on the underlying felonies remain on the docket . . . ."). Therefore, Defendant's double jeopardy argument cannot be raised for the first time on appeal on a motion for arrest of judgment because a double jeopardy problem does not constitute a fatal defect on the face of the record. *See id.* Accordingly, Defendant's double jeopardy argument is waived pursuant to the general rule described above.

### B. Rule 2

Despite the rule disallowing appellate review of issues not raised at trial, our Supreme Court has stated that the appellate courts may elect to review an unpreserved double jeopardy issue on appeal pursuant to our "supervisory power over the trial divisions [and] Rule 2 of the North Carolina Rules of Appellate Procedure . . . ." *State v. Dudley*, 319 N.C. 656, 659, 356 S.E.2d 361, 364 (1987); N.C.R. App. P. 2 ("To prevent manifest injustice to a party . . . either court of the appellate division may . . . suspend or vary the requirements or

provisions of any of these rules in a case pending before it upon application of a party or upon its own initiative, and may order proceedings in accordance with its directions."). The decision to review an unpreserved argument relating to double jeopardy is entirely discretionary. *See, e.g.*, *State v. McLaughlin*, 321 N.C. 267, 272, 362 S.E.2d 280, 283 (1987) (declining to review the defendant's double jeopardy argument because the defendant failed to raise that issue at trial and thus waived appellate review); *Dudley*, 319 N.C. at 659, 356 S.E.2d at 364 (reviewing the defendant's double jeopardy argument even though it was waived); *State v. Mebane*, 106 N.C. App. 516, 532–33, 418 S.E.2d 245, 255–56 (declining to review the defendant's double jeopardy argument because it was not raised at trial and noting that "[e]ven if we opted to review the double jeopardy issue . . . , we [would conclude that Defendants failed to establish] . . . . error on appeal"), *disc. review denied*, 332 N.C. 670, 424 S.E.2d 414 (1992). After a careful review of Defendant's double jeopardy argument in this case, we elect to suspend the rules and review the issue under Rule 2.

*II. Double Jeopardy*

"Both the fifth amendment to the United States Constitution and article I, section 19 of the North Carolina Constitution prohibit multiple punishments for the *same* offense *absent clear legislative intent to the contrary*." *State v. Etheridge*, 319 N.C. 34, 50, 352 S.E.2d 673, 683 (1987) (citation omitted; certain emphasis added). In *State v. Ezell*, we described the double jeopardy doctrine as follows:

> For decades, the Supreme Court of the United States has applied . . . the *Blockburger* test in analyzing multiple offenses for double jeopardy purposes. The Court in *Blockburger v. United States*, 284 U.S. 299, 76 L. Ed. 306 (1932), held as follows:
>
> > The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not.
>
> If what purports to be two offenses is actually one under the *Blockburger* test, double jeopardy prohibits prosecution for both.

159 N.C. App. 103, 106–07, 582 S.E.2d 679, 682 (2003) (certain citations omitted). The United States Supreme Court has clarified, however, that

> double jeopardy does not prohibit multiple punishment for two offenses — even if one is

> included within the other under the *Blockburger* test — if both are tried at the same time and the legislature intended for both offenses to be separately punished . . . .

*Id.* at 107, 582 S.E.2d at 682 (citing, *inter alia*, *Missouri v. Hunter*, 459 U.S. 359, 74 L. Ed. 2d 535 (1983)). The North Carolina Supreme Court has relied on both *Blockburger* and *Hunter* when determining whether double jeopardy applies under article I, section 19 of the North Carolina Constitution. *See, e.g.*, *State v. Gardner*, 315 N.C. 444, 340 S.E.2d 701 (1986). Thus, a defendant convicted of multiple criminal offenses in the same trial is only protected by double jeopardy principles if (1) those criminal offenses constitute the "same offense" under *Blockburger and* (2) the legislature did not intend for the offenses to be punished separately. *See id.* at 454–55, 340 S.E.2d at 709.

Here, Defendant argues that the judgments against him violate principles of double jeopardy because he was separately convicted of speeding and reckless driving and also convicted of felony speeding to elude arrest, which was raised from a misdemeanor to a felony because Defendant was speeding and driving recklessly. Therefore, pursuant to the test articulated above, we must first determine whether Defendant's convictions

for speeding and reckless driving in addition to felony speeding to elude arrest constitute punishments for the same offense. If so, we must then determine whether the legislature intended for those offenses to be punished alternatively or separately. After a thorough review, we conclude that Defendant's convictions constitute the same offense for purposes of double jeopardy and, further, that the legislature intended for them to be punished alternatively, not separately.

### A. The Same Offense

As discussed above, the applicable test to determine whether double jeopardy attaches in a single prosecution is "whether each statute requires proof of a fact which the others do not." *Etheridge*, 319 N.C. at 50, 352 S.E.2d at 683 (citing *Blockburger*).

> By definition, all essential elements of a lesser[-]included offense are also elements of the greater offense. Invariably then, a lesser[-]included offense requires no proof beyond that required for the greater offense, and the two crimes are considered identical for double jeopardy purposes. If neither crime constitutes a lesser[-]included offense of the other, the convictions will fail to support a plea of double jeopardy.

*Id.* (citations omitted).

In this case, as discussed above, Defendant was convicted of speeding, reckless driving, and felony speeding to elude arrest based on the aggravating factors of speeding and reckless driving. The essential elements of speeding under section 20-141(j1) are: (1) driving (2) a vehicle (3) on a highway (4) more than 15 miles per hour over the speed limit or over 80 miles per hour. N.C. Gen. Stat. § 20-141(j1) (2013). The essential elements of reckless driving under section 20-140(b) are: (1) driving (2) any vehicle (3) on a highway or any public vehicular area (4) without due caution and circumspection and (5) at a speed or in a manner so as to endanger or be likely to endanger any person or property. N.C. Gen. Stat. § 20-140(b) (2013). The essential elements of misdemeanor speeding to elude arrest under section 20-141.5(a) are: (1) operating a motor vehicle (2) on a street, highway, or public vehicular area (3) while fleeing or attempting to elude a law enforcement officer (4) who is in the lawful performance of his duties. N.C. Gen. Stat. § 20-141.5(a). The elements of the two aggravating factors used to raise the crime to a felony in this case are (i)(1) speeding (2) in excess of 15 miles per hour over the legal speed limit and (ii) "reckless driving as proscribed in G.S. 20-140." Both of these factors contain the same essential elements as the separate

crimes listed above. Therefore, whether Defendant was subjected to multiple punishments for the "same offense" turns on whether these aggravating factors are considered "essential elements" of the felony speeding to elude arrest conviction in this case. We hold that they are.

In its brief, the State argues that Defendant has not been punished for the same offense because the aggravating factors used to raise speeding to elude arrest from a misdemeanor to a felony are not essential elements of that offense. In so arguing, the State relies on the following language from this Court's opinion in *State v. Funchess*:

> Although many of the enumerated aggravating factors [for speeding to elude arrest] are in fact separate crimes under various provisions of our General Statutes, they are not separate offenses . . . , but are merely alternate ways of enhancing the punishment for speeding to elude arrest from a misdemeanor to a Class H felony.

141 N.C. App. 302, 309, 540 S.E.2d 435, 439 (2000). The State misapplies this language to the circumstances presented by this case.

In *Funchess*, the defendant was indicted for felonious speeding to elude arrest based on three of the eight listed aggravating factors. *Id.* at 306, 540 S.E.2d at 438. At trial, the court instructed the jury that the State was required to

prove "two or more" of those three factors in order to convict the defendant of felony speeding to elude arrest. *Id.* On appeal, the defendant argued that the trial court's instruction violated the constitutional provision requiring a unanimous jury verdict because it did not tell the jury to "unanimously agree on the same two factors[.]" *Id.* at 307, 540 S.E.2d at 438. In finding that the trial court did not violate the unanimity requirement, we held that the aggravating factors enumerated in section 20-141.5 did not constitute separate criminal offenses when used to elevate the misdemeanor offense of speeding to elude arrest to a felony and, therefore, did not allow the jury to separately convict the defendant of more than one possible crime. *Id.* Thus, we determined that the aggravating factors — while they might constitute criminal offenses in other sections of the code — could not be separately punished in the context of section 20-141.5. This holding has no direct bearing on whether the listed aggravating factors may be considered "essential elements" of felony speeding to elude arrest for purposes of double jeopardy.

In addition, the United States Supreme Court has clarified that "the existence of any fact (other than a prior conviction) [which] increases the maximum punishment that may be imposed on a defendant . . . — no matter how the State labels it —

constitutes an element [of the offense]" for purposes of the Sixth Amendment right to a jury trial. *Sattazahn v. Pennsylvania*, 537 U.S. 101, 111, 154 L. Ed. 2d 588, 598 (2003) (citing *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435 (2000)); *see also Ring v. Arizona*, 536 U.S. 584, 609, 153 L. Ed. 2d 556, 577 (2002) (holding that aggravating circumstances that make a defendant eligible for the death penalty "operate as the functional equivalent of an element of a greater offense" for purposes of the Sixth Amendment's jury trial guarantee) (citation and internal quotation marks omitted). The Court also commented that there is "no principled reason to distinguish, [in the context of a capital case], between what constitutes an offense for purposes of the Sixth Amendment's jury-trial guarantee and what constitutes an 'offence'[4] for purposes of the Fifth Amendment's Double Jeopardy Clause." *Sattazahn*, 537 U.S. at 111-12, 154 L. Ed. 2d at 599 (citation omitted).

Pursuant to the Supreme Court opinions discussed above and because the speeding and reckless driving factors increased the maximum penalty for speeding to elude arrest from 45 days to 10

---

[4] The Fifth Amendment uses the archaic spelling of the word offense, writing it with a "c." *See* U.S. Const. amend. V; *see generally* Webster's Third New International Dictionary of the English Language Unabridged 1566 (3d ed. 2002).

months, *see* N.C. Gen. Stat. §§ 15A-1340.17, 1340.23 (2013), we conclude that those factors constituted elements of speeding to elude arrest in this case for double jeopardy purposes. Therefore, we hold that Defendant was twice subjected to punishment for the "same offense" under *Blockburger* when he was convicted of speeding, reckless driving, and felony speeding to elude arrest.

### B. The Intent of the Legislature

Even when a defendant is punished twice in the same trial for the "same offense," however, our Supreme Court has stated that relief under double jeopardy principles is only available if the legislature did not intend for multiple punishments to be imposed. Citing the United States Supreme Court's opinion in *Hunter*, 459 U.S. at 368-69, 74 L. Ed. 2d at 544, our Supreme Court has described the intention doctrine as follows:

> The Double Jeopardy Clause plays only a limited role in deciding whether cumulative punishments may be imposed under different statutes at a single criminal proceeding — that role being only to prevent the sentencing court from prescribing *greater punishments than the legislature intended*. . . . [W]here our legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the "same" conduct under *Blockburger*, a court's task of statutory construction is at an end and the prosecutor may seek and the trial

> court or jury may impose cumulative punishment under such statutes in a single trial.

*Gardner*, 315 N.C. at 460–62, 340 S.E.2d at 712–13 (citations and certain quotation marks omitted; emphasis added) (determining that the defendant could be punished for the crimes of felony larceny and breaking or entering because those crimes deal with "separate and distinct social norms" and were placed in different articles and subchapters of the criminal code, which were entitled "Offenses Against the Habitation and Other Buildings" and "Offenses Against Property," respectively); *see also State v. Pipkins*, 337 N.C. 431, 434–35, 446 S.E.2d 360, 362–63 (1994) (holding that the defendant's convictions and punishments for trafficking in cocaine by possession and felonious possession of cocaine did not violate the principles of double jeopardy because the legislature intended the punishments to protect against two distinct "perceived evils" — the use of cocaine in the possession offense and the "growing concern regarding the gravity of illegal drug activity in North Carolina" in the trafficking offense). *But see Ezell*, 159 N.C. App. at 110–11, 582 S.E.2d at 684–85 (holding that the defendant was impermissibly subjected to double jeopardy when — in the same case — he was convicted of assault with a deadly weapon

with intent to kill inflicting serious injury and assault inflicting serious bodily injury because the legislature intended the offenses to allow *alternative* punishments, not separate ones). In addition, our Supreme Court has noted that

> the presumption raised by the *Blockburger* test . . . may be rebutted by a clear indication of legislative intent; and, when such intent is found, it must be respected, regardless of the outcome of the application of the *Blockburger* test. That is, even if the elements of the two statutory crimes are identical and neither requires proof of a fact that the other does not, the defendant may, in a single trial, be convicted of and punished for both crimes if it is found that the legislature so intended.

*Gardner*, 315 N.C. at 455, 340 S.E.2d at 709 (citations omitted). Given our jurisprudence on this doctrine, we must determine whether the legislature intended for the crimes of speeding and reckless driving to be punished *separately*, or *alternatively*, from felony speeding to elude arrest when the latter is based on the aggravating factors of speeding and reckless driving. After careful review, we conclude that the legislature intended the latter.

The speeding charge in this case is prohibited under section 20-141(j1) of the North Carolina General Statutes. In determining the legislature's purpose for enacting section 20-141, we have commented that the section was created "for the

protection of persons and property and in the interest of public safety[] and the preservation of human life." *State v. Bennor*, 6 N.C. App. 188, 190, 169 S.E.2d 393, 394 (1969) (citation and internal quotation marks omitted). In addition, our Supreme Court has stated more generally that speeding laws are intended to protect both "those traveling on arterial highways and those entering them from intersecting roads[] from the dangers arising because of the frequency of travel along the through highway." *Groome v. Davis*, 215 N.C. 510, 515, 2 S.E.2d 771, 774 (1939). Therefore, the speeding statute was enacted to protect against harm to persons and property.

Reckless driving is prohibited under section 20-140(b) of the North Carolina General Statutes. Subsection (b) provides that "[a]ny person who drives any vehicle upon a highway or any public vehicular area without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property shall be guilty of reckless driving." N.C. Gen. Stat. § 20-140(b). As with speeding, our Supreme Court has stated that this conduct was prohibited by the legislature "for the protection of persons and property and in the interest of public safety[] and the preservation of human

life." *State v. Norris*, 242 N.C. 47, 53, 86 S.E.2d 916, 920 (1955).

Speeding to elude arrest is prohibited under section 20-141.5 of the North Carolina General Statutes. Subsection (a) provides that "[i]t shall be unlawful for any person to operate a motor vehicle on a street, highway, or public vehicular area while fleeing or attempting to elude a law enforcement officer who is in the lawful performance of his duties." Subsection (b) raises that offense from a misdemeanor to a felony in the presence of two or more of the following factors: (1) speeding, (2) gross impairment while driving, (3) reckless driving, (4) negligent driving leading to an accident causing property damage or personal injury, (5) driving while license revoked, (6) speeding on school property or in an area designated as a school zone or a highway work zone, (7) passing a stopped school bus, or (8) driving with a child under 12 years old. N.C. Gen. Stat. § 20-141.5(a)-(b). Our appellate courts have not offered a distinct legislative rationale for this statute. Nonetheless, the statute's own terms state that an individual in violation of subsection (a) whose act results in "the death of *any* person" shall be subject to a higher penalty. N.C. Gen. Stat. § 20-141.5(b1) (emphasis added). In addition, by transforming the

crime from a misdemeanor into a felony for actions like speeding, reckless driving, causing property damage or personal injury, and endangering the lives of children, the plain language of the statute suggests that the legislature intended to deter actions subjecting persons, property, and public safety to greater risk. Thus, at least to the extent that speeding to elude arrest is raised from a misdemeanor to a felony pursuant to the aggravating factors of speeding and reckless driving, we see no reason to conclude that the legislature intended this crime to permit a separate punishment from speeding and reckless driving.

In *Gardner*, as noted above, our Supreme Court determined that the defendant's convictions for larceny and breaking or entering did not invoke principles of double jeopardy because the legislature intended for those offenses to prohibit "two separate and distinct social norms, the breaking into or entering the property of another and the stealing and carrying away of another's property." *Gardner*, 315 N.C. at 461, 340 S.E.2d at 712. In so holding, the Court pointed out that this was evidenced by the fact that the two offenses were placed in different articles and subchapters of the criminal code. *Id.* at 462, 340 S.E.2d at 713.

In this case, the crimes of speeding, reckless driving, and felony speeding to elude arrest (when supported by the aggravating factors of speeding and reckless driving) all seek to deter the same conduct — driving on public roads in a way that might endanger public safety or property. In addition, unlike the statutes in *Gardner*, each offense is listed in approximately the same section of the Motor Vehicle Act — Chapter 20 (Motor Vehicles), Article 3 (The Motor Vehicle Act of 1937), Part 10 (Operation of Vehicles and Rules of the Road). Therefore, pursuant to the rationale employed in *Gardner*, it is apparent that the legislature intended for the offenses of "speeding" and "reckless driving" to permit alternative, not separate, punishments to "felony speeding to elude arrest" when supported by the aggravating factors of speeding and reckless driving.

Accordingly, we hold that Defendant was unconstitutionally subjected to double jeopardy when he was convicted of speeding and reckless driving in addition to felony fleeing to elude arrest based on speeding and reckless driving. As a result, we need not address Defendant's second, alternative, argument on appeal. For the foregoing reasons, we arrest judgment on the

speeding and reckless driving convictions in 11 CRS 50049[5] and remand for resentencing.

JUDGMENT ARRESTED; REMANDED FOR RESENTENCING.

Judges GEER and ERVIN concur.

---

[5] The speeding and reckless driving convictions were consolidated for sentencing purposes with other convictions, including felony speeding to elude arrest. As a result, Defendant was sentenced to 6 to 8 months in prison. This is within the presumptive range for felony speeding to elude arrest, alone, when the defendant has a prior record level II, as here. *See* N.C. Gen. Stat. §§ 15A-1340.17, 20-141.5(b). Though the State does not argue that resentencing would be unnecessary in this case, we nonetheless point out that the judgment must be remanded because we cannot assume that the trial court's consideration of the speeding and reckless driving convictions had no effect on the sentence imposed. *State v. Brown*, 350 N.C. 193, 213, 513 S.E.2d 57, 69-70 (1999) ("[W]e . . . conclude that the judgment on this offense must be remanded for resentencing because the trial court consolidated it with the solicitation conviction, which we have now vacated, in imposing a single sentence of thirty years, and we cannot assume that the trial court's consideration of two offenses, as opposed to one, had no affect [sic] on the sentence imposed."); *see also State v. Williams*, 150 N.C. App. 497, 505-06, 563 S.E.2d 616, 621 (2002) (arresting judgment on the crime of first degree trespass, when that conviction was consolidated for trial with the crime of resisting a public officer, and remanding for resentencing on the resisting crime even though both crimes had a presumptive sentence of 60 days because "whether the crime warrants the sentence imposed in connection with the two consolidated crimes is a matter for the trial court to reconsider") (citation omitted).