IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA 17-535

 Filed: 19 June 2018

Wake County, Nos. 14CRS222806, 222866-67

STATE OF NORTH CAROLINA

 v.

BRANDON MARQUIS COZART, Defendant.

 Appeal by defendant from an order entered 8 September 2016 by Judge Paul

C. Ridgeway in Wake County Superior Court. Heard in the Court of Appeals 2

November 2017.

 Attorney General Joshua H. Stein, by Assistant Attorney General Sherri H.
 Lawrence, for the State.

 Paul F. Herzog for defendant-appellant.

 BERGER, Judge.

 On September 8, 2016, a Wake County jury found Brandon Marquis Cozart

(“Defendant”) guilty of three counts of statutory rape and two counts of indecent

liberties with a child. Defendant appeals, contending the trial court failed to conduct

a Grady hearing prior to imposing lifetime satellite-based monitoring (“SBM”), failed

to substitute court appointed counsel upon his request, and he received ineffective

assistance of counsel (“IAC”). We hold that Defendant failed to properly appeal the

imposition of SBM. Further, we deny his petition for writ of certiorari, find no error
 STATE V. COZART

 Opinion of the Court

regarding the trial court’s inquiry concerning discharge of counsel, and dismiss his

IAC claim without prejudice.

 Factual and Procedural Background

 In 2014, Defendant, along with his fiancée and infant son, moved into the home

of his friend, Montrail Alexander (“Alexander”). Fourteen year old Mary1 lived across

the street with her mother, siblings, and grandparents. Mary would frequently visit

Alexander’s house for sleepovers and family events because Mary’s mother was close

friends with Alexander. Mary regarded Alexander as a “big brother,” and had been

visiting him for seven or eight years.

 Mary met Defendant at Alexander’s house for the first time in February 2014.

Mary and her siblings would visit Alexander’s house three to four times a week, and

sleep over every other weekend. Defendant made remarks to Mary and her younger

sister about their appearance that made them uncomfortable, and, as a result, their

visits to Alexander’s house became less frequent.

 Mary testified that in March or mid-April of 2014, she decided to spend the

night at Alexander’s house with her two younger sisters and two step-brothers,

despite feeling uneasy. That night, Alexander’s family slept in their own bedroom,

Defendant slept in his bedroom with his family, and the children all slept in the living

room, with Mary on the couch. Mary heard Defendant go to the bathroom, and when

 1Pseudonyms are used throughout to protect the juveniles’ identities and for ease of reading
pursuant to N.C.R. App. P. 3.1(b).

 -2-
 STATE V. COZART

 Opinion of the Court

he came out, he approached her, put his hand over her mouth, and told her to be

quiet. Defendant forcibly undressed Mary and made her have unprotected vaginal

intercourse with him. Mary testified there was blood in her underwear and she did

not know what to do because she was scared. Mary returned to her home the next

morning and did not tell anyone what happened.

 A few weeks later, Mary went over to Alexander’s house again to see his

newborn baby. Defendant was the only adult in the house. After she entered,

Defendant forced Mary against the living room couch while she said “no” repeatedly.

Defendant then made Mary go into the hallway where he forcibly removed her pants

and underwear and engaged in sexual intercourse with her. Defendant stopped after

Mary told him her stomach was hurting. When Alexander’s girlfriend came home,

Mary left. After this incident, Mary was bleeding heavily and had semen in her

vagina. Mary did not tell her mother about the specific encounters because she was

afraid her family would not believe her.

 Defendant moved out of Alexander’s house in June 2014, and Mary had no

further sexual encounters with him. In late June, Mary found out that she was

pregnant after taking two pregnancy tests, and messaged Defendant on Facebook

regarding the pregnancy.

 After reporting the incident to law enforcement, the Garner Police Department

started an investigation. Investigators obtained DNA samples from Mary,

 -3-
 STATE V. COZART

 Opinion of the Court

Defendant, and Mary’s child who was born in January 2015. DNA analysis showed

there was a 99.9999 percent probability that Defendant was the father of Mary’s

child. On September 30, 2014, the Garner Police Department arrested Defendant for

two counts of felony statutory rape of a person thirteen, fourteen, or fifteen years old.

 On September 25, 2014, prior to Defendant’s arrest, Chelsea, a fifteen-year-old

runaway, met Defendant on the street at Moore Square in downtown Raleigh.

Defendant approached Chelsea and initiated a conversation. Defendant told her

about his son’s birthday party at a local hotel. Chelsea went with Defendant to the

hotel, thinking that it would be a birthday party. Defendant initiated a sexual

encounter with Chelsea. Chelsea testified that she did not want Defendant to have

sex with her, but eventually acquiesced. Defendant had sexual intercourse with

Chelsea twice at his insistence in the hotel room.

 After the encounter, Chelsea left the hotel and did not talk about the incident

until she spoke with Detective William Tripp with the Raleigh Police Department on

September 26, 2014. Chelsea underwent a child medical exam at SAFEchild

Advocacy Center in Raleigh based on a recommendation by Detective Tripp. Chelsea

again identified Defendant as the man who had sexual intercourse with her in an

interview at the center.

 On September 30, 2014, Defendant was arrested for three counts of felony

statutory rape of a person thirteen, fourteen, or fifteen years old, and two counts of

 -4-
 STATE V. COZART

 Opinion of the Court

indecent liberties with a child. On October 27 and 28, 2014, a Wake County Grand

Jury indicted Defendant for five counts of statutory rape of a person thirteen,

fourteen, or fifteen years old and three counts of taking indecent liberties with a child.

The offenses were joined for trial.

 At the close of the State’s evidence at trial, one count of statutory rape was

dismissed by the trial court for lack of evidence. The jury found Defendant guilty of

three counts of statutory rape of a person thirteen, fourteen, or fifteen years old, and

two counts of taking indecent liberties with a child. Defendant was sentenced to two

consecutive active sentences of 300 to 420 months imprisonment. Upon his release,

Defendant was ordered to register as a sex offender for life and enroll in lifetime SBM.

Defendant gave oral notice of appeal.

 Analysis

I. Satellite-Based Monitoring

 Defendant concedes that the oral notice of appeal was insufficient to confer

jurisdiction to this Court to consider his SBM claim. On July 28, 2017, Defendant

filed a petition for writ of certiorari pursuant to Rule 21 of the North Carolina Rules

of Appellate Procedure regarding the imposition of SBM upon his release for the

remainder of his natural life. See N.C.R. App. P. 21(c). Defendant requests that this

Court grant a petition for writ of certiorari to hear his appeal on this issue, and then

 -5-
 STATE V. COZART

 Opinion of the Court

suspend the Appellate Rules under Rule 2 to reach the merits of his unpreserved

constitutional argument. We deny Defendant’s requests.

 “Our Court has held that SBM hearings and proceedings are not criminal

actions, but are instead a civil regulatory scheme.” State v. Brooks, 204 N.C. App.

193, 194, 693 S.E.2d 204, 206 (2010) (citation, internal quotation marks, and brackets

omitted). “In light of our decisions interpreting an SBM hearing as not being a

criminal trial or proceeding for purposes of appeal, we must hold that oral notice

pursuant to N.C.R. App. P. 4(a)(1) is insufficient to confer jurisdiction on this Court.

Id. at 194-95, 693 S.E.2d at 206. Here, Defendant gave oral notice of appeal in open

court. Defendant concedes his oral notice of appeal was defective regarding this issue

since SBM hearings are civil proceedings. Oral notice of appeal is insufficient in civil

proceedings to confer jurisdiction to this Court under Rule 3 of the North Carolina

Rules of Appellate Procedure.

 Rule 3 provides that, for appeals from civil proceedings,

 Any party entitled by law to appeal from a judgment or
 order of a superior or district court rendered in a civil
 action or special proceeding may take appeal by filing
 notice of appeal with the clerk of superior court and serving
 copies thereof upon all other parties within the time
 prescribed by subsection (c) of this rule.

N.C.R. App. P. 3(a) (emphasis added). “Appellate Rule 3 is jurisdictional and if the

requirements of this rule are not complied with, the appeal must be dismissed.”

Currin-Dillehay Bldg. Supply v. Frazier, 100 N.C. App. 188, 189, 394 S.E.2d 683, 683

 -6-
 STATE V. COZART

 Opinion of the Court

(citation omitted), appeal dismissed and disc. review denied, 327 N.C. 633, 399 S.E.2d

326 (1990).

 On September 8, 2016, Defendant gave oral notice of appeal in open court after

being sentenced in the instant case. However, Defendant’s appeal only concerns

SBM, and not the underlying crime or conviction; therefore, it is wholly civil in

nature, and compliance with Rule 3(a) is imperative. Brooks, 204 N.C. App. at 194,

693 S.E.2d at 206. No written notice of appeal was served upon the parties in this

case.

 “[W]rit of certiorari may be issued in appropriate circumstances by either

appellate court to permit review of the judgments and orders of trial tribunals when

the right to prosecute an appeal has been lost by failure to take timely action . . . .”

N.C.R. App. P. 21(a)(1) (emphasis added). “If this Court routinely allowed a writ of

certiorari in every case in which the appellant failed to properly appeal, it would

render meaningless the rules governing the time and manner of noticing appeals.”

State v. Bishop, ___ N.C. App. ___, ___, 805 S.E.2d 367, 369 (2017), disc. review

denied, ___ N.C. ___, 811 S.E.2d 159 (2018). “[A]s with other constitutional

arguments, a defendant’s Fourth Amendment SBM challenge must be properly

asserted at the hearing in order to preserve the issue for appeal.” State v. Grady ___

N.C. App. ___, ___, ___ S.E.2d ___, ___, COA17-12, 2018 WL 2206344, *3 (2018).

 -7-
 STATE V. COZART

 Opinion of the Court

 We recognize that in various prior cases, this Court has issued a writ of

certiorari to hear SBM appeals. However, the cases relied upon by Defendant were

heard when “neither party had the benefit of this Court’s analysis in [State v.] Blue

and [State v.] Morris.” Bishop, ___ N.C. App. at ___, 805 S.E.2d at 369 (citation and

brackets omitted); see State v. Blue, ___ N.C. App. ___, ___, 783 S.E.2d 524, 526-27

(2016); State v. Morris, ___ N.C. App. ___, ___, 783 S.E.2d 528, 529-30 (2016).

Defendant had full knowledge and notice of the proper procedure necessary to notice

an appeal concerning SBM implementation in the instant case. Accordingly, we

decline to grant certiorari.

 Defendant also requests we suspend the North Carolina Rules of Appellate

Procedure to reach the merits of SBM implementation by the trial court because the

trial court committed a “sentencing error” that was “so fundamental as to have

resulted in a clear miscarriage of justice.” Defendant relies on two cases, State v.

Dudley, 319 N.C. 656, 356 S.E.2d 361 (1987) and State v. Mulder, 233 N.C. App. 82,

755 S.E.2d 98 (2014), to support his argument. However, both Dudley and Mulder

concern double jeopardy appeals for a criminal trial, and are not relevant to our

analysis.

 Defendant has not properly argued on appeal how his failure to object to the

imposition of lifetime SBM resulted in a fundamental error or manifest injustice. As

in Bishop, because Defendant is

 -8-
 STATE V. COZART

 Opinion of the Court

 no different from other defendants who failed to preserve
 their constitutional arguments in the trial court, and
 because he has not argued any specific facts that
 demonstrate manifest injustice if we decline to invoke Rule
 2, we do not believe this case is an appropriate use of that
 extraordinary step.

Bishop, ___ N.C. App. at ___, 805 S.E.2d at 370. Therefore, we deny Defendant’s

petition for writ of certiorari to review the imposition of SBM on appeal.

II. Motion to Discharge Counsel in Criminal Trial

 Defendant contends the trial court erred in failing to appoint substitute trial

counsel, and this failure resulted in Defendant suffering prejudicial error due to

ineffective assistance of counsel. We disagree. This issue arises from a judgment

from a superior court in a criminal action, and therefore is properly before this Court

pursuant to Rule 4(a) of the North Carolina Rules of Appellate Procedure.

 “Absent a showing of a sixth amendment violation, the decision of whether

appointed counsel shall be replaced is a matter committed to the sound discretion of

the trial court.” State v. Hutchins, 303 N.C. 321, 336, 279 S.E.2d 788, 798 (1981)

(citation omitted). The right to appointed counsel does not “include the privilege to

insist that counsel be removed and replaced with other counsel merely because

defendant becomes dissatisfied with his attorney’s services.” State v. Sweezy, 291

N.C. 366, 371, 230 S.E.2d 524, 528 (1976) (citations omitted).

 Here, the trial court allowed Defendant the opportunity to explain why he

wanted to discharge his appointed counsel. Defendant explained that his family was

 -9-
 STATE V. COZART

 Opinion of the Court

attempting to hire an attorney; that he was dissatisfied with the amount of contact

and visitation that trial counsel had afforded him prior to going to trial; and he was

dissatisfied with the content of one of the visits concerning the discussion of a plea

agreement. Upon its own motion, the trial court inquired as to Defendant’s

competence, and deemed him competent to proceed before ruling on his motion. The

trial court treated Defendant’s request as both a motion to substitute counsel and a

motion to continue, and denied both motions. There is no evidence in the record

indicating the trial court abused its discretion in denying Defendant’s motion to

discharge appointed counsel, and we hold the trial court did not err.

 Defendant further asserts that his trial counsel provided ineffective assistance

during pre-trial plea bargaining. “It is manifest that there are no hard and fast rules

that can be employed to determine whether a defendant has been denied the effective

assistance of counsel.” Hutchins, 303 N.C. at 336, 279 S.E.2d at 798 (citations

omitted). “Instead, each case must be examined on an individual basis so that the

totality of its circumstances are considered.” Id. (citations omitted). “IAC claims

brought on direct review will be decided on the merits when the cold record reveals

that no further investigation is required, i.e., claims that may be developed and

argued without such ancillary procedures as the appointment of investigators or an

evidentiary hearing.” State v. Fair, 354 N.C. 131, 166, 557 S.E.2d 500, 524,

reconsideration denied, 354 N.C. 576, 558 S.E.2d 862 (2001), cert. denied, 535 U.S.

 - 10 -
 STATE V. COZART

 Opinion of the Court

1114, 153 L. Ed. 2d 162 (2002). This Court “limits its review to material included in

‘the record on appeal and the verbatim transcript of proceedings, if one is designated.’

” Id. at 166, 557 S.E.2d at 525 (citing N.C.R. App. P. 9(a)).

 In the case sub judice, the record is insufficient to determine whether trial

counsel was ineffective. Therefore, we dismiss Defendant’s IAC claim without

prejudice. State v. Todd, 369 N.C. 707, 712, 799 S.E.2d 834, 838 (2017).

 Conclusion

 Defendant did not properly file civil notice of appeal to this Court regarding

the trial court’s imposition of SBM, and, in our discretion, we deny his petition for

writ of certiorari. The trial court did not err in its denial of Defendant’s motion to

substitute counsel in the criminal trial. There is insufficient evidence in the record

on appeal to reach the merits of Defendant’s IAC claim for the criminal trial, and we

dismiss without prejudice.

 NO ERROR IN PART AND DISMISSED IN PART.

 Judge DAVIS concurs.

 Judge ZACHARY concurs with separate opinion.

 - 11 -
 No. COA17-535 – State v. Cozart

 ZACHARY, Judge, concurring.

 As Defendant did not object in the trial court to the constitutionality of his

enrollment in satellite-based monitoring, in order to reach the merits of that

argument this Court would be required—in addition to allowing certiorari—to take

the extraordinary step of invoking Rule 2. The Majority declines to do so, and I concur.

I write separately to convey my disquiet with this outcome.

 In State v. Bishop, we noted that a petition for writ of certiorari “ ‘must show

merit[.]’ ” State v. Bishop, ___ N.C. App. ___, ___, 805 S.E.2d 367, 369 (2017) (quoting

State v. Grundler, 251 N.C. 177, 189, 111 S.E.2d 1, 9 (1959)). Given that the

defendant’s argument in Bishop concerning the constitutionality of the satellite-

based monitoring order was “procedurally barred because he failed to raise it in the

trial court,” we declined to issue “a writ of certiorari to review [that] unpreserved

argument on direct appeal.” Id. at ___, 805 S.E.2d at 369, 370.

 While the case at bar is in all relevant points similar to Bishop, whether to

invoke Rule 2 in any particular case remains within the sound discretion of this

Court. State v. Hill, ___ N.C. App. ___, ___, 785 S.E.2d 178, 182 (2016). Nevertheless,

“ ‘inconsistent application’ of Rule 2 . . . leads to injustice when some similarly

situated litigants are permitted to benefit from it but others are not.” Bishop, ___

N.C. App. at ___, 805 S.E.2d at 370 (quoting State v. Hart, 361 N.C. 309, 317, 644

S.E.2d 201, 206 (2007)). I therefore concur in the Majority’s decision not to invoke

Rule 2 in the instant case.
 STATE V. COZART

 ZACHARY, J., concurring

 I write separately to express my concern with the harshness of this result. A

defendant is left with no recourse in the event that his counsel fails to object to the

constitutionality of satellite-based monitoring before the trial court, which happens

with some frequency. E.g., State v. Spinks, ___ N.C. App. ___, 808 S.E.2d 350 (2017);

State v. Harding, ___ N.C. App. ___, ___ S.E.2d ___, 2018 N.C. App. LEXIS 245.

Moreover, where a defendant is denied appellate review based on an error of counsel,

ordinarily the last avenue of relief is to file a motion for appropriate relief alleging

ineffective assistance of counsel. However, where counsel’s error pertains to satellite-

based monitoring, an ineffective assistance of counsel claim is not available to the

defendant. State v. Wagoner, 199 N.C. App. 321, 332, 683 S.E.2d 391, 400 (2009) (“[A]

claim for ineffective assistance of counsel is available only in criminal matters, and

we have already concluded that [satellite-based monitoring] is not a criminal

punishment.”). I regret the application of our Appellate Rules in such a manner that

a defendant is deprived of any relief from a potentially unconstitutional order,

particularly in light of this Court’s recent holding in State v. Grady, 2018 N.C. App.

LEXIS 460.

 -2-