BERGER, Judge.
*97 On September 8, 2016, a Wake County jury found Brandon Marquis Cozart ("Defendant") guilty of three counts of statutory rape and two counts of indecent liberties with a child. Defendant appeals, contending the trial court failed to conduct a Grady hearing prior to imposing lifetime satellite-based monitoring ("SBM"), failed to substitute court appointed counsel upon his request, and he received ineffective assistance of counsel ("IAC"). We hold that Defendant failed to properly appeal the imposition of SBM. Further, we deny his petition for writ of certiorari, find no error regarding the trial court's inquiry concerning discharge of counsel, and dismiss his IAC claim without prejudice.
Factual and Procedural Background
In 2014, Defendant, along with his fiancée and infant son, moved into the home of his friend, Montrail Alexander ("Alexander"). Fourteen year old Mary[1] lived across the street with her mother, siblings, and grandparents. Mary would frequently visit Alexander's house for sleepovers and family events because Mary's mother was close friends with Alexander. Mary regarded Alexander as a "big brother," and had been visiting him for seven or eight years.
Mary met Defendant at Alexander's house for the first time in February 2014. Mary and her siblings would visit Alexander's house three to four times a week, and sleep over every other weekend. Defendant made remarks to Mary and her younger sister about their appearance that made them uncomfortable, and, as a result, their visits to Alexander's house became less frequent.
Mary testified that in March or mid-April of 2014, she decided to spend the night at Alexander's house with her two younger sisters and two step-brothers, despite feeling uneasy. That night, Alexander's *98 family slept in their own bedroom, Defendant slept in his bedroom with his family, and the children all slept in the living room, with Mary on the couch. Mary heard Defendant go to the bathroom, *601 and when he came out, he approached her, put his hand over her mouth, and told her to be quiet. Defendant forcibly undressed Mary and made her have unprotected vaginal intercourse with him. Mary testified there was blood in her underwear and she did not know what to do because she was scared. Mary returned to her home the next morning and did not tell anyone what happened.
A few weeks later, Mary went over to Alexander's house again to see his newborn baby. Defendant was the only adult in the house. After she entered, Defendant forced Mary against the living room couch while she said "no" repeatedly. Defendant then made Mary go into the hallway where he forcibly removed her pants and underwear and engaged in sexual intercourse with her. Defendant stopped after Mary told him her stomach was hurting. When Alexander's girlfriend came home, Mary left. After this incident, Mary was bleeding heavily and had semen in her vagina. Mary did not tell her mother about the specific encounters because she was afraid her family would not believe her.
Defendant moved out of Alexander's house in June 2014, and Mary had no further sexual encounters with him. In late June, Mary found out that she was pregnant after taking two pregnancy tests, and messaged Defendant on Facebook regarding the pregnancy.
After reporting the incident to law enforcement, the Garner Police Department started an investigation. Investigators obtained DNA samples from Mary, Defendant, and Mary's child who was born in January 2015. DNA analysis showed there was a 99.9999 percent probability that Defendant was the father of Mary's child. On September 30, 2014, the Garner Police Department arrested Defendant for two counts of felony statutory rape of a person thirteen, fourteen, or fifteen years old.
On September 25, 2014, prior to Defendant's arrest, Chelsea, a fifteen-year-old runaway, met Defendant on the street at Moore Square in downtown Raleigh. Defendant approached Chelsea and initiated a conversation. Defendant told her about his son's birthday party at a local hotel. Chelsea went with Defendant to the hotel, thinking that it would be a birthday party. Defendant initiated a sexual encounter with Chelsea. Chelsea testified that she did not want Defendant to have sex with her, but eventually acquiesced. Defendant had sexual intercourse with Chelsea twice at his insistence in the hotel room.
*99 After the encounter, Chelsea left the hotel and did not talk about the incident until she spoke with Detective William Tripp with the Raleigh Police Department on September 26, 2014. Chelsea underwent a child medical exam at SAFEchild Advocacy Center in Raleigh based on a recommendation by Detective Tripp. Chelsea again identified Defendant as the man who had sexual intercourse with her in an interview at the center.
On September 30, 2014, Defendant was arrested for three counts of felony statutory rape of a person thirteen, fourteen, or fifteen years old, and two counts of indecent liberties with a child. On October 27 and 28, 2014, a Wake County Grand Jury indicted Defendant for five counts of statutory rape of a person thirteen, fourteen, or fifteen years old and three counts of taking indecent liberties with a child. The offenses were joined for trial.
At the close of the State's evidence at trial, one count of statutory rape was dismissed by the trial court for lack of evidence. The jury found Defendant guilty of three counts of statutory rape of a person thirteen, fourteen, or fifteen years old, and two counts of taking indecent liberties with a child. Defendant was sentenced to two consecutive active sentences of 300 to 420 months imprisonment. Upon his release, Defendant was ordered to register as a sex offender for life and enroll in lifetime SBM. Defendant gave oral notice of appeal.
Analysis
I. Satellite-Based Monitoring
Defendant concedes that the oral notice of appeal was insufficient to confer jurisdiction to this Court to consider his SBM claim. On July 28, 2017, Defendant filed a petition for writ of certiorari pursuant to Rule 21 of the North Carolina Rules of Appellate Procedure regarding the imposition of SBM upon his release for the remainder of *602 his natural life. See N.C.R. App. P. 21(c). Defendant requests that this Court grant a petition for writ of certiorari to hear his appeal on this issue, and then suspend the Appellate Rules under Rule 2 to reach the merits of his unpreserved constitutional argument. We deny Defendant's requests.
"Our Court has held that SBM hearings and proceedings are not criminal actions, but are instead a civil regulatory scheme." State v. Brooks , 204 N.C. App. 193, 194, 693 S.E.2d 204, 206 (2010) (citation, internal quotation marks, and brackets omitted). "In light of our decisions interpreting an SBM hearing as not being a criminal trial or proceeding for purposes of appeal, we must hold that oral notice pursuant to *100 N.C.R. App. P. 4(a)(1) is insufficient to confer jurisdiction on this Court." Id. at 194-95, 693 S.E.2d at 206. Here, Defendant gave oral notice of appeal in open court. Defendant concedes his oral notice of appeal was defective regarding this issue since SBM hearings are civil proceedings. Oral notice of appeal is insufficient in civil proceedings to confer jurisdiction to this Court under Rule 3 of the North Carolina Rules of Appellate Procedure.
Rule 3 provides that, for appeals from civil proceedings,
Any party entitled by law to appeal from a judgment or order of a superior or district court rendered in a civil action or special proceeding may take appeal by filing notice of appeal with the clerk of superior court and serving copies thereof upon all other parties within the time prescribed by subsection (c) of this rule.
N.C.R. App. P. 3(a) (emphasis added). "Appellate Rule 3 is jurisdictional and if the requirements of this rule are not complied with, the appeal must be dismissed." Currin-Dillehay Bldg. Supply v. Frazier , 100 N.C. App. 188, 189, 394 S.E.2d 683, 683 (citation omitted), appeal dismissed and disc. review denied , 327 N.C. 633, 399 S.E.2d 326 (1990).
On September 8, 2016, Defendant gave oral notice of appeal in open court after being sentenced in the instant case. However, Defendant's appeal only concerns SBM, and not the underlying crime or conviction; therefore, it is wholly civil in nature, and compliance with Rule 3(a) is imperative. Brooks , 204 N.C. App. at 194, 693 S.E.2d at 206. No written notice of appeal was served upon the parties in this case.
"[W]rit of certiorari may be issued in appropriate circumstances by either appellate court to permit review of the judgments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action ...." N.C.R. App. P. 21(a)(1) (emphasis added). "If this Court routinely allowed a writ of certiorari in every case in which the appellant failed to properly appeal, it would render meaningless the rules governing the time and manner of noticing appeals." State v. Bishop , --- N.C. App. ----, ----, 805 S.E.2d 367, 369 (2017), disc. review denied , 370 N.C. 695, 811 S.E.2d 159 (2018). "[A]s with other constitutional arguments, a defendant's Fourth Amendment SBM challenge must be properly asserted at the hearing in order to preserve the issue for appeal." State v. Grady, --- N.C. App. ----, ----, 817 S.E.2d 18, 23, COA17-12, 2018 WL 2206344, *3 (2018).
We recognize that in various prior cases, this Court has issued a writ of certiorari to hear SBM appeals. However, the cases relied upon *101 by Defendant were heard when "neither party had the benefit of this Court's analysis in [State v. ] Blue and [State v. ] Morris ." Bishop , --- N.C. App. at ----, 805 S.E.2d at 369 (citation and brackets omitted); see State v. Blue , 246 N.C. App. 259, 783 S.E.2d 524, 526-27 (2016) ; State v. Morris , 246 N.C. App. 349, 783 S.E.2d 528, 529-30 (2016). Defendant had full knowledge and notice of the proper procedure necessary to notice an appeal concerning SBM implementation in the instant case. Accordingly, we decline to grant certiorari.
Defendant also requests we suspend the North Carolina Rules of Appellate Procedure to reach the merits of SBM implementation by the trial court because the trial court committed a "sentencing error" that was "so fundamental as to have resulted in a clear miscarriage of justice." Defendant relies on two cases, State v. Dudley , 319 N.C. 656, 356 S.E.2d 361 (1987) and State v. Mulder , 233 N.C. App. 82, 755 S.E.2d 98 (2014), to support his argument. However, both Dudley *603 and Mulder concern double jeopardy appeals for a criminal trial, and are not relevant to our analysis.
Defendant has not properly argued on appeal how his failure to object to the imposition of lifetime SBM resulted in a fundamental error or manifest injustice. As in Bishop , because Defendant is
no different from other defendants who failed to preserve their constitutional arguments in the trial court, and because he has not argued any specific facts that demonstrate manifest injustice if we decline to invoke Rule 2, we do not believe this case is an appropriate use of that extraordinary step.
Bishop , --- N.C. App. at ----, 805 S.E.2d at 370. Therefore, we deny Defendant's petition for writ of certiorari to review the imposition of SBM on appeal.
II. Motion to Discharge Counsel in Criminal Trial
Defendant contends the trial court erred in failing to appoint substitute trial counsel, and this failure resulted in Defendant suffering prejudicial error due to ineffective assistance of counsel. We disagree. This issue arises from a judgment from a superior court in a criminal action, and therefore is properly before this Court pursuant to Rule 4(a) of the North Carolina Rules of Appellate Procedure.
"Absent a showing of a sixth amendment violation, the decision of whether appointed counsel shall be replaced is a matter committed to the sound discretion of the trial court."
*102 State v. Hutchins , 303 N.C. 321, 336, 279 S.E.2d 788, 798 (1981) (citation omitted). The right to appointed counsel does not "include the privilege to insist that counsel be removed and replaced with other counsel merely because defendant becomes dissatisfied with his attorney's services." State v. Sweezy , 291 N.C. 366, 371, 230 S.E.2d 524, 528 (1976) (citations omitted).
Here, the trial court allowed Defendant the opportunity to explain why he wanted to discharge his appointed counsel. Defendant explained that his family was attempting to hire an attorney; that he was dissatisfied with the amount of contact and visitation that trial counsel had afforded him prior to going to trial; and he was dissatisfied with the content of one of the visits concerning the discussion of a plea agreement. Upon its own motion, the trial court inquired as to Defendant's competence, and deemed him competent to proceed before ruling on his motion. The trial court treated Defendant's request as both a motion to substitute counsel and a motion to continue, and denied both motions. There is no evidence in the record indicating the trial court abused its discretion in denying Defendant's motion to discharge appointed counsel, and we hold the trial court did not err.
Defendant further asserts that his trial counsel provided ineffective assistance during pre-trial plea bargaining. "It is manifest that there are no hard and fast rules that can be employed to determine whether a defendant has been denied the effective assistance of counsel." Hutchins , 303 N.C. at 336, 279 S.E.2d at 798 (citations omitted). "Instead, each case must be examined on an individual basis so that the totality of its circumstances are considered." Id. (citations omitted). "IAC claims brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing." State v. Fair , 354 N.C. 131, 166, 557 S.E.2d 500, 524, reconsideration denied , 354 N.C. 576, 558 S.E.2d 862 (2001), cert. denied , 535 U.S. 1114, 122 S.Ct. 2332, 153 L.Ed. 2d 162 (2002). This Court "limits its review to material included in 'the record on appeal and the verbatim transcript of proceedings, if one is designated.' " Id. at 166, 557 S.E.2d at 525 (citing N.C.R. App. P. 9(a) ).
In the case sub judice , the record is insufficient to determine whether trial counsel was ineffective. Therefore, we dismiss Defendant's IAC claim without prejudice. State v. Todd , 369 N.C. 707, 712, 799 S.E.2d 834, 838 (2017).
*604 *103 Conclusion
Defendant did not properly file civil notice of appeal to this Court regarding the trial court's imposition of SBM, and, in our discretion, we deny his petition for writ of certiorari. The trial court did not err in its denial of Defendant's motion to substitute counsel in the criminal trial. There is insufficient evidence in the record on appeal to reach the merits of Defendant's IAC claim for the criminal trial, and we dismiss without prejudice.
NO ERROR IN PART AND DISMISSED IN PART.
Judge DAVIS concurs.
Judge ZACHARY concurs with separate opinion.

Pseudonyms are used throughout to protect the juveniles' identities and for ease of reading pursuant to N.C.R. App. P. 3.1(b).