NO. COA13-1161

NORTH CAROLINA COURT OF APPEALS

Filed: 3 June 2014

STATE OF NORTH CAROLINA,

   v.                         Wayne County
                                  No. 11 CRS 50145

MICHAEL KEVIN McGEE,


Appeal by defendant from judgment entered 20 February 2013 by Judge Edwin G. Wilson, Jr. in Wayne County Superior Court. Heard in the Court of Appeals 18 February 2014.

> *Roy Cooper, Attorney General, by Amanda P. Little, Assistant Attorney General, for the State.*

> *Staples S. Hughes, Appellate Defender, by Katherine Jane Allen, Assistant Appellate Defender, for defendant-appellant.*


STEELMAN, Judge.


The trial court did not err in instructing the jury that bail bondsmen cannot violate North Carolina motor vehicle laws in order to make an arrest. Defendant was not authorized to operate his motor vehicle at a speed greater than was reasonable and prudent under the existing conditions because of his status as a bail bondsman. The trial court's instruction to the jury did not lessen the State's burden of showing that defendant's

violation of North Carolina motor vehicle laws was intentional, willful, wanton, or reckless.

## I. Factual and Procedural History

On the morning of 31 August 2010, Michael Kevin McGee (defendant), a bail bondsman, called 911 and advised law enforcement that he was pursuing George Mays (Mays), a person who had failed to appear in court. This pursuit was at a high rate of speed in the Salem Church Road area of Goldsboro. Defendant's fiancée, Anecia Neal, was in the front passenger seat of defendant's car. Defendant requested assistance from law enforcement in apprehending Mays. He was traveling at speeds between 80 and 100 miles per hour in his pursuit of Mays. Ivan Carter, another bail bondsman, was also pursuing Mays, in a separate vehicle.

Salem Church Road is a two-lane road with a 45 miles per hour speed limit. Mays passed a vehicle operated by Brenda Cox, in a zone marked with a double yellow line. Defendant also attempted to pass Cox's vehicle, but did so at a curve, and lost control of his vehicle, which went down an embankment.

Ms. Neal was trapped inside the vehicle, with serious injuries. After being transported to Wayne Memorial Hospital, Ms. Neal died of her injuries.

On 7 May 2012, defendant was indicted for one count of involuntary manslaughter and one count of misdemeanor death by motor vehicle. On 20 February 2013, a jury found defendant guilty of involuntary manslaughter. He was sentenced to a term of 13 to 16 months imprisonment. This sentence was suspended and defendant was placed on supervised probation for 36 months. The court imposed a 3 month term of special probation in the Department of Adult Correction as an intermediate sanction.

Defendant appeals.

## II. Jury Instruction

In his only argument on appeal, defendant contends that the trial court erred in instructing the jury that in the course of pursuing a defendant, a bail bondsman may not violate North Carolina motor vehicle laws. We disagree.

## A. Standard of Review

The question of whether a trial court erred in instructing the jury is a question of law reviewed *de novo*. *State v. Osorio*, 196 N.C. App. 458, 466, 675 S.E.2d 144, 149 (2009). The standard of review set forth by this Court for reviewing jury instructions is as follows:

> This Court reviews jury instructions contextually and in its entirety. The charge will be held sufficient if it presents the law of the case in such manner as to leave no

> reasonable cause to believe the jury was misled or misinformed[.] . . . Under such a standard of review, it is not enough for the appealing party to show that error occurred in the jury instructions; rather, it must be demonstrated that such error was likely, in light of the entire charge, to mislead the jury.

*State v. Blizzard*, 169 N.C. App. 285, 296-97, 610 S.E.2d 245, 253 (2005) (citation and quotations omitted).

## B. Analysis

In its instructions to the jury, the trial court stated that: "[b]ail bondsmen can make an arrest; however they may not violate the motor vehicle laws of North Carolina to do so." Defendant objected to this instruction. On appeal, defendant makes three arguments concerning the trial court's jury instructions: (1) a bail bondsman may violate North Carolina motor vehicle laws when apprehending a principal; (2) whether the reasonableness of the means utilized by a bail bondsman in apprehending a principal is a question of fact for the jury; and (3) whether the trial court lessened the State's burden of proof by peremptorily instructing the jury that a bail bondsman cannot violate North Carolina motor vehicle laws in the process of arresting a principal.

### 1. Violation of State Motor Vehicle Laws

North Carolina common law has long recognized that a bail bondsman has sweeping powers to apprehend a principal and may use such force as is reasonably necessary in that process. *State v. Mathis*, 349 N.C. 503, 512, 509 S.E.2d 155, 160 (1998). This right of apprehension, however, is limited and does not give a bail bondsman unlimited powers.

N.C. Gen. Stat. § 20-145 states:

> [S]peed limitations . . . shall not apply to vehicles when operated with due regard for safety under the direction of the police in the chase or apprehension of violators of the law or of persons charged with or suspected of any such violation, nor to fire department or fire patrol vehicles when traveling in response to a fire alarm, nor to public or private ambulances and rescue squad emergency service vehicles when traveling in emergencies, nor to vehicles operated by county fire marshals and civil preparedness coordinators when traveling in the performances of their duties . . .

N.C. Gen. Stat. § 20-145 (2013). The General Assembly created specific exemptions to the motor vehicle laws pertaining to speed for police, fire, and emergency service vehicles. There is no similar statutory provision that exempts a bail bondsman from complying with applicable speed limits when pursuing a principal. Contrary to defendant's argument that a bail bondsman may use reasonable means, including exceeding applicable speed limits, to apprehend a principal, a bail bondsmen is like any

other citizen in that he or she must follow the state motor vehicle laws. If the General Assembly had intended to exempt bail bondsmen from complying with applicable speed limits when pursuing a fugitive, it could have easily included such a provision in N.C. Gen. Stat. § 20-145. It is not the role of the courts to create exceptions to the motor vehicle laws enacted by the General Assembly.

In this case, defendant pursued Mays at speeds exceeding the posted speed limits by 30 to 55 miles per hour. We note that defendant's conduct in this case appears to have violated several other motor vehicle safety statutes as well. However, because the trial court submitted the charge of involuntary manslaughter to the jury based solely upon defendant's conduct in operating his vehicle at a speed greater than was reasonable and prudent under conditions then existing, we restrict our analysis to that specific conduct.

Speed restrictions have been enacted "for the protection of persons and property and in the interest of public safety, and the preservation of human life." *State v. Norris*, 242 N.C. 47, 53, 86 S.E.2d 916, 920 (1955). While N.C. Gen. Stat. § 20-145 exempts police officers from speed laws when pursuing a violator of the law, even this exemption does not apply to those driving

"carelessly and heedlessly, in willful or wanton disregard of the rights or safety of others, or without due circumspection and at a speed or in any manner so as to endanger or be likely to endanger any person or property[.]" *Id*. "An intentional, willful, or wanton violation of a statute or ordinance, designed for the protection of human life or limb, which proximately results in injury or death, is culpable negligence." *Id.* at 54, 86 S.E.2d at 921. Furthermore, "[c]ulpable negligence is such recklessness or carelessness, proximately resulting in injury or death, as imports a thoughtless disregard of consequences or a heedless indifference to the safety and rights of others." *Id.*

2. Reasonableness Standard for Bail Bondsman Actions

In *State v. Mathis*, our Supreme Court stated that bail bondsmen may "use such force as is reasonably necessary to overcome the resistance of a third party who attempts to impede their privileged capture of their principal." *Mathis*, 349 N.C. at 514, 509 S.E.2d at 162. Defendant relies on this statement of the law to argue that his right to apprehend Mays is only limited by reasonableness and thus, whether the means used in his attempted apprehension of Mays was reasonable is a question of fact for the jury to decide.

The elements of involuntary manslaughter are: "(1) an unintentional killing; (2) proximately caused by either (a) an unlawful act not amounting to a felony and not ordinarily dangerous to human life, or (b) culpable negligence." *State v. Davis*, 198 N.C. App. 443, 446, 680 S.E.2d 239, 242 (2009) (quoting *State v. Hudson,* 345 N.C. 729, 733, 483 S.E.2d 436, 439 (1997)). Culpable negligence is "[a]n intentional, willful, or wanton violation of a statute or ordinance, designed for the protection of human life or limb," or "such recklessness or carelessness, proximately resulting in injury or death, as imports a thoughtless disregard of consequences or a heedless indifference to the safety and rights of others." *Norris*, 242 N.C. at 54, 86 S.E.2d at 921.

There are limitations upon the rights of bail bondsmen to use reasonable force in the apprehension of a principal where the rights of third parties are affected. For example, when pursuing a principal into the home of a third party, the bail bondsman may only enter the third party home if the principal also resides there. *Mathis*, 349 N.C. at 513, 509 S.E.2d at 161. Bail bond agreements contain the principal's consent for the bail bondsmen to "enter the residence of his principal and to seize him." *Id.* However, the principal cannot contract away the

rights of third parties. Just as the bail bondsmen cannot enter the homes of third parties without their consent, a bail bondsmen pursuing a principal upon the highways of this State cannot engage in conduct that endangers the lives or property of third parties. Third parties have a right to expect that others using the public roads, including bail bondsmen, will follow the laws set forth in Chapter 20 of our General Statutes.

### 3. Jury Instructions and the State's Burden of Proof

The trial court instructed the jury, concerning the charge of involuntary manslaughter, as follows:

> The Defendant has been accused of involuntary manslaughter, which is the unintentional killing of a human being by culpable negligence.
>
> Now I charge that for you to find the Defendant is guilty of involuntary manslaughter, the State must prove three things beyond a reasonable doubt:
>
> First, that the Defendant violated the law of this state governing the operation of motor vehicles by operating a vehicle at a greater speed than is reasonable and prudent under the conditions then existing. *Bail bondsmen can make an arrest; however, they may not violate the motor vehicle laws of North Carolina to do so.*
>
> Second, that the Defendant's violation constituted culpable negligence. The violation of a motor vehicle law which results in injury or death will constitute culpable negligence if the violation is

willful, wanton, or intentional. But, where there is an unintentional or inadvertent violation of the law, such violation standing alone does not constitute culpable negligence. The inadvertent or unintentional violation of the law must be accompanied by reckless of probable consequences of a dangerous nature, when tested by the rule of reasonable foresight, amounting altogether to a thoughtless disregard of consequences or a heedless indifference to the safety of others.

Third, the State must prove that the Defendant's intentional, willful, wanton or reckless violation of the law proximately caused the victim's death.

(Emphasis added)

The trial court properly instructed the jury that "[b]ail bondsmen can make an arrest; however, they may not violate the motor vehicle laws of North Carolina to do so." This addition to the North Carolina Pattern Jury Instruction for voluntary manslaughter (NCPJI-Criminal 206.55) did not instruct the jury as to whether the defendant violated any motor vehicle laws. Rather, the instruction clarified that a bail bondsman's right to arrest a principal does not include the right to violate motor vehicle laws. The issue that was presented to the jury was whether the defendant violated N.C. Gen. Stat. §20-141(a), the general statutory speed restrictions, by driving at a greater speed than was reasonable and prudent given the circumstances.

The jury had to find that defendant violated this motor vehicle law in order to convict defendant of involuntary manslaughter or misdemeanor death by vehicle. In instructing the jury concerning this essential element of the charged crimes, the trial court did not invade the province of the jury because the jury still maintained the right to decide whether or not defendant violated that law.

Finally, the added jury instruction did not decrease the State's burden of proof relating to that element of the charged crime. The State's burden was not the reasonableness standard advocated by defendant, but rather a culpable negligence standard requiring willful, wanton, or negligent conduct. The additional language simply advised the jury that defendant's status as a bail bondsman did not exempt him from compliance with the motor vehicle laws of this State. This Court has held that it must "consider the instructions in the context of how a reasonable juror might interpret the words." *State v. Flaherty*, 55 N.C. App. 14, 23, 284 S.E.2d 565, 571 (1981) (citations and quotations omitted). A reasonable juror would read the challenged instruction as a clarification of the law at issue, not a directive that defendant violated state motor vehicle laws in his pursuit of Mays. The jury maintained discretion to decide

whether defendant violated the applicable statute, whether that conduct rose to the level of intentional, willful, wanton or reckless conduct, and whether this conduct proximately caused the victim's death.

We hold that the trial court's jury instructions were proper. Defendant's arguments are without merit.

## IV. Conclusion

The trial court did not err in instructing the jury that bail bondsmen cannot violate North Carolina motor vehicle laws in order to make an arrest.

NO ERROR.

Judges McGEE and ERVIN concur.