IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-1088

 Filed: 17 December 2019

Orange County, Nos. 16 CRS 000123, 051476

STATE OF NORTH CAROLINA

 v.

KENNETH PIERRE, Defendant.

 Appeal by Defendant from judgments entered 14 May 2018 by Judge Rebecca

W. Holt in Orange County Superior Court. Heard in the Court of Appeals 9 May

2019.

 Attorney General Joshua H. Stein, by Assistant Attorney General Thomas H.
 Moore, for the State.

 Coleman, Gledhill, Hargrave, Merritt & Rainsford, P.C., by James Rainsford
 and Cyrus Griswold, for defendant-appellant.

 MURPHY, Judge.

 When a trial court errs in instructing the jury on a theory of guilt that was not

supported by the evidence adduced at trial, we will not order a new trial unless the

defendant can show the instructional error was prejudicial. To prove such an error

prejudicial, the defendant must show that the State failed to present exceedingly

strong evidence of his guilt or that that evidence was either in dispute or subject to

serious credibility-related questions. Here, the State presented exceedingly strong

evidence of Defendant’s guilt that was neither in dispute nor subject to serious

credibility-related questions. We hold the trial court committed no prejudicial error.
 STATE V. PIERRE

 Opinion of the Court

 BACKGROUND

 On 17 May 2016, Willie Stroud (“Stroud”) and Bernard Degraffenreidt

(“Bernard”) hosted two young women, Jermisha Baldwin (“Jermisha”) and

Defendant’s niece, Kendretta Pierre (“Kendretta”), and also Bernard’s brother,

Derrick Degraffenreidt, at their home in Chapel Hill. Stroud, the owner of the house,

called local police during the visit and claimed one of the women had stolen his wallet.

Chapel Hill Police reported to the house and identified Jermisha and Kendretta as

the female houseguests. The officers interviewed the women, who denied taking

Stroud’s wallet, and left after Stroud informed them that he did not wish to file any

criminal charges. The same group was back at Stroud’s house the following day.

 During the second visit, Kendretta “went into a spell . . . [and] started throwing

things off the [kitchen] table. She then went in the living room and fell down on the

floor and started kicking.” This presumably occurred as a result of Kendretta’s

drinking and consuming “synthetic weed.” Kendretta and Jermisha left the house

shortly after Kendretta regained her faculties, and “about an hour later” Defendant,

Kenneth Pierre, arrived at Stroud’s house.

 Defendant was driving a car with at least two passengers. After parking in

the driveway, Defendant approached Stroud and Bernard, who were on the porch

when he arrived. Both Stroud and Bernard testified that Defendant asked which one

of them was Stroud and accused Stroud of trying to take sexual advantage of

 -2-
 STATE V. PIERRE

 Opinion of the Court

Kendretta. Defendant then said, “I’m coming to kill—kill Willie[,]” and reached down

to draw a handgun from a holster on his waist. Stroud struggled with Defendant to

keep him from drawing the gun, but, eventually, Defendant was able to draw his gun

and aim it at Stroud, who fled inside his home. At this point, Bernard, who was

already inside the house, tried to call the police, “but my nerves were so bad I couldn't

even hit the numbers right.”

 Bernard believed Defendant had left and went to the door to see if he had, but

Stroud advised him that Defendant was still there and knocked Bernard to the

ground. “[T]hat’s when the shots went off.” Multiple gunshots were fired and one

entered Stroud’s house, landing in a dresser inside Stroud’s bedroom. After the

gunshots, Stroud and Bernard heard what they assumed was Defendant’s car driving

away. Shortly thereafter, Stroud’s son, Willie Stroud Jr., and a neighbor both

reported the shooting to police.

 During their investigation of the crime scene, police found two .40-caliber

bullet casings in the street in front of Stroud’s house and also recovered a .40-caliber

bullet from a dresser inside his home. Stroud told the officers he did not know the

man who had confronted him, but noted that the man identified himself as “KP” and

that he thought the man was related to one of the women who had visited his house

earlier that day. While police remained on the scene, Stroud called his niece, Retillias

 -3-
 STATE V. PIERRE

 Opinion of the Court

Byrd Johnson (“Retillias”), and Retillias traveled to Stroud’s house to comfort him

and assist in cleaning up the house.

 When Retillias arrived, Stroud told her what happened, and that the

perpetrator had identified himself as “KP.” Retillias testified:

 I told him that I only knew one KP. So I actually pulled
 out my cell phone. And I pulled up my Facebook; and I
 showed him a picture of KP, which was actually
 [Defendant,] Kenneth Pierre. And from that picture, the
 Facebook photo I showed him, he told me that's who he had
 just finished wrestling with. So that’s how we knew exactly
 who it was.

Suspecting Defendant was the person who had shot into Stroud’s home, Retillias

confronted Defendant about the incident the next time the two saw each other, and

Defendant told her he had been the one who fired the weapon. Retillias testified that

she asked Defendant:

 “Why did you go and shoot up my uncle’s house and why
 were you wrestling with him --”

 Q: Okay. And he told you that he went there?

 [Retillias:] --that he could have shot him. Yes.

 Q: And shot and had a firearm?

 [Retillias:] And that he was upset. Yes.

 Defendant was eventually arrested and charged with discharging a firearm

into an occupied dwelling and possession of a firearm by a convicted felon, and the

grand jury for Orange County subsequently indicted Defendant on the same.

 -4-
 STATE V. PIERRE

 Opinion of the Court

Defendant was tried by a jury in Orange County Superior Court. During the

conference regarding jury instructions, Defendant objected to the inclusion of an

acting in concert instruction for the discharging a firearm into an occupied dwelling

charge. The trial court overruled that objection and also chose not to grant

Defendant’s request to include a separate box on the verdict sheet that the jury could

check if they found him guilty by reason of his acting in concert with another

individual.1

 1 The trial court instructed the jury:

 The defendant has been charged with discharging a firearm into an
 occupied dwelling. For you to find the defendant guilty of this offense,
 the State must prove three things beyond a reasonable doubt: First,
 that the defendant willfully or wantonly discharged a firearm into a
 dwelling -- an act is willful or wanton when it is done intentionally with
 knowledge or a reasonable ground to believe that the act would
 endanger the rights or safety of others; second, that the dwelling was
 occupied by one or more persons at the time the firearm was
 discharged; and third, that the defendant knew or had reasonable
 grounds to believe that the dwelling was occupied by one or more
 persons.
 For a defendant to be guilty of a crime, it is not necessary that
 the defendant do all of the acts necessary to constitute the crime. If
 two or more persons join in a common purpose to commit discharging
 a firearm into an occupied dwelling, each of them, if actually or
 constructively present, is guilty of the crime. A defendant is not guilty
 of a crime merely because the defendant is present at the scene, even
 though the defendant may silently approve of the crime or secretly
 intend to assist in its commission. To be guilty, the defendant must
 aid or actively encourage the person committing the crime or in some
 way communicate to another person the defendant's intention to assist
 in its commission.
 If you find from the evidence beyond a reasonable doubt that
 on or about the alleged date the defendant, acting either by himself or
 together with others, willfully or wantonly discharged a firearm into a
 dwelling while it was occupied by one or more persons and that the
 defendant knew or had reasonable grounds to believe that it was

 -5-
 STATE V. PIERRE

 Opinion of the Court

 The jury found Defendant guilty of both discharging a firearm into an occupied

dwelling and possession of a firearm by a felon. Defendant was sentenced to

consecutive active sentences of 99 to 131 months and 18 to 31 months, respectively,

for his two convictions. Defendant timely filed notice of appeal.

 ANALYSIS

 Defendant raises two interrelated arguments on appeal: (1) the trial court

erred by instructing the jury on acting in concert because that charge was not

supported by the evidence; and (2) he is entitled to a new trial on the charge of

discharging a firearm into an occupied dwelling because the trial court’s error was

prejudicial. We hold the trial court committed no prejudicial error in its jury

instructions.

 “It is the duty of the trial court to instruct the jury on all substantial features

of a case raised by the evidence.” State v. Shaw, 322 N.C. 797, 803, 370 S.E.2d 546,

549 (1988). “The question of whether a trial court erred in instructing the jury is a

question of law reviewed de novo.” State v. McGee, 234 N.C. App. 285, 287, 758 S.E.2d

661, 663 (2014). Additionally, we review such challenges for harmless error.

 occupied by one or more persons, it would be your duty to return a
 verdict of guilty. If you do not so find or have a reasonable doubt as to
 one or more of these things, it would be your duty to return a verdict of
 not guilty.

 -6-
 STATE V. PIERRE

 Opinion of the Court

N.C.G.S. § 15A-1443(a) (2017); State v. Malachi, 371 N.C. 719, 821 S.E.2d 407 (2018).

Our Supreme Court has stated:

 As a general proposition, a defendant seeking to obtain
 appellate relief on the basis of an error to which he or she
 lodged an appropriate contemporaneous objection at trial
 must establish that “there is a reasonable possibility that,
 had the error in question not been committed, a different
 result would have been reached at the trial out of which the
 appeal arises.” N.C.G.S. § 15A-1443(a)(2017). However,
 the history of this Court’s decisions in cases involving the
 submission of similar erroneous instructions and our
 consistent insistence that jury verdicts concerning a
 defendant’s guilt or innocence have an adequate
 evidentiary foundation persuade us that instructional
 errors like the one at issue in this case are exceedingly
 serious and merit close scrutiny to ensure that there is no
 “reasonable possibility” that the jury convicted the
 defendant on the basis of such an unsupported legal theory.
 However, in the event that the State presents exceedingly
 strong evidence of defendant’s guilt on the basis of a theory
 that has sufficient support and the State’s evidence is
 neither in dispute nor subject to serious credibility-related
 questions, it is unlikely that a reasonable jury would elect
 to convict the defendant on the basis of an unsupported
 legal theory.

Malachi, 371 N.C. at 738, 821 S.E.2d at 421 (internal footnote omitted).

 Defendant argues the trial court committed prejudicial or harmful error by

instructing the jury on acting in concert when there was insufficient evidence to

support that instruction. Even if the trial court’s instruction on acting in concert was

erroneous because it was unsupported by the evidence presented at trial, we cannot

hold such an error was prejudicial.

 -7-
 STATE V. PIERRE

 Opinion of the Court

 Since it was decided in December 2018, State v. Malachi has not received much

attention in our appellate courts. Our published cases interpreting the Malachi

decision coupled with Malachi inform the structure of our analysis in deciding

whether an unsupported jury instruction was prejudicial. Id.; see also State v. Steen,

826 S.E.2d 478 (N.C. Ct. App. 2019); State v. Chevallier, 824 S.E.2d 440, 450 (N.C.

Ct. App. 2019) (holding that “[g]iven the strong, undisputed, and credible evidence of

[the d]efendant’s possession of a firearm based upon a constructive-firearm-

possession theory, even if the trial court erred by also instructing on actual

possession, [the d]efendant has failed to satisfy his burden of demonstrating

prejudice”). The analysis is twofold: first we ask whether the State presented

“exceedingly strong evidence of defendant’s guilt on the basis of a theory that has

sufficient support” from the evidence presented; and, second, we must ensure that

“the State’s evidence is neither in dispute nor subject to serious credibility-related

questions[.]” Malachi, 371 N.C. at 738, 821 S.E.2d at 421. If we are satisfied that

those conditions have been met, we must conclude “it is unlikely that a reasonable

jury would elect to convict the defendant on the basis of an unsupported legal theory.”

Id.

 A. Exceedingly Strong Evidence

 Here, the evidence of Defendant’s guilt was exceedingly strong. Testimony of

both Stroud and Bernard showed Defendant drove to Stroud’s house and approached

 -8-
 STATE V. PIERRE

 Opinion of the Court

the front porch alone with a holstered firearm on his hip. Defendant then threatened

to kill Stroud, accused him of trying to take sexual advantage of Defendant’s niece,

and then brandished a handgun and pointed it at him. After Stroud was able to get

inside his house he told Bernard not to go back outside because Defendant was still

there. Stroud tackled Bernard to the ground because he still heard someone outside

and shortly thereafter multiple gunshots were fired into the house.

 Bernard’s testimony identified Defendant as the person who approached him

and Stroud on the porch on the evening in question:

 [Bernard:] We was sitting on the porch talking. And we
 seen this little car pull up; looked like a station wagon;
 looked like a Kia . . . pulled up. Somebody hollered out the
 window and said, “That’s that – that’s that bald-headed
 fucker on the porch. Willie. Willie.” And I looked at Willie.
 I said, “Willie, do you know them?” Willie said, “I don’t
 know them.” So they took the car and pulled up in the back
 of the house, came up through in our driveway, pulled up
 in the back.

 Q: Could you tell how many people were in the car?

 [Bernard:] It was three people in the back, a guy in the
 back, one sitting on the passenger side, and the young man
 there was driving.

 Q: Okay.

 [Bernard:] So I was sitting on the porch on the corner of the
 porch like this. He comes up on the side –

 Q: When you say “he,” who do you mean?

 [Bernard:] Mr. KP. Mr. KP came up on the side.

 -9-
 STATE V. PIERRE

 Opinion of the Court

 Q: Okay. And you say “the young man over there,” are you
 pointing out somebody in the courtroom?

 [Bernard:] Yes, sir.

 Q: And who is that person?

 [Bernard:] That’s Mr. KP right here (indicating).

 Additionally, Retillias gave the following testimony in describing the

conversation she had with Defendant after the incident at Stroud’s home:

 [Retillias:] . . . I said, “Kenneth, do you know that was my
 uncle whose house that you shot up, or whatever?” He said
 he did not know that that was my uncle. . . . And he went
 on to explain about his nieces and the situation that
 occurred and that it was inappropriate behavior with my
 uncle. And so he in return went to confront my uncle there
 where they had their altercation.
 ...
 Me and Kenny really didn’t have a detailed conversation
 about, you know, anything pertaining to him wresting [sic]
 or attacking; I just really questioned him on why, ‘Why did
 you do it?’”

 Q: Why did you shoot his house?

 [Retillias:] Yeah. “Why did you go and shoot up my uncle’s
 house and why were you wrestling with him --”

 Q: Okay. And he told you that he went there?

 [Retillias:] --that he could have shot him. Yes.

 Q: And shot and had a firearm?

 [Retillias:] And that he was upset. Yes.

 - 10 -
 STATE V. PIERRE

 Opinion of the Court

Retillias’s testimony, coupled with Stroud and Bernard’s testimony placing

Defendant at the scene and threatening to kill Stroud, brandishing a firearm, and

engaging in an altercation with Stroud over the firearm, amounts to exceedingly

strong evidence that Defendant committed the offense of discharging a firearm into

an occupied dwelling. Having determined as much, we may only find that the trial

court’s instructional error was prejudicial if the aforementioned evidence is either “in

dispute [or] subject to serious credibility-related questions[.]” Malachi, 371 N.C. at

738, 821 S.E.2d at 421.

 B. Evidence in Dispute

 Malachi requires us to determine whether the evidence that provides

exceedingly strong support of Defendant’s guilt is in dispute. Id. The evidence

providing support for Defendant’s guilt is not in dispute, and Defendant makes no

argument to the contrary. Defendant argues “the evidence that Defendant drove the

vehicle involved in the shooting is in dispute, [because] Bernard . . . saw Defendant

driving a Kia, . . . Stroud saw him driving a dark grey Jetta GTI hatchback with dark

tinted windows, and [Stroud’s neighbor] saw a white Honda moments after he heard

gunshots.” However, the testimony regarding the color or model of the car Defendant

was allegedly driving on the night in question is not material to Defendant’s

conviction. That evidence is in dispute, but it does not create a material dispute that

would render the instruction prejudicially harmful under Malachi.

 - 11 -
 STATE V. PIERRE

 Opinion of the Court

 Again, Malachi states the trial court does not commit prejudicial error “in the

event that the State presents exceedingly strong evidence of defendant’s guilt on the

basis of a theory that has sufficient support and the State’s evidence is neither in

dispute nor subject to serious credibility-related questions[.]” Id. A broad reading of

this language could be that the State must present exceedingly strong evidence of

Defendant’s guilt and none of the State’s overall body of evidence may be in dispute

or subject to serious credibility-related questions. However, we feel the more accurate

interpretation is that the latter two conditions operate on the same body of evidence

described in the first part of the sentence; i.e., the evidence that provides strong

support cannot be in dispute or subject to serious credibility-related questions.

 Aside from the evidence regarding the car, Defendant does not argue any other

evidence was in dispute and we do not see where any of the exceedingly strong

evidence material to the theory of Defendant’s conviction was disputed at trial.

 C. Serious Credibility-Related Questions

 If the material evidence is not in dispute, we must next review the same

evidence to determine whether it is “subject to serious credibility-related questions.”

Id. This issue is closer than the previous two.

 Defendant’s attorney effectively impeached Retillias after she testified that

Defendant confessed to her that he “shot up” Stroud’s house on the night in question.

After Retillias’s testimony (which is set out above), Defense counsel raised a few

 - 12 -
 STATE V. PIERRE

 Opinion of the Court

reasons Retillias may be biased against Defendant; namely, two occasions in which

he or his friends and family seemingly wronged Retillias’s mother. Retillias answered

questions about both instances and stated that she did not “have any hard feelings”

toward Defendant stemming from those incidents. Then, at the conclusion of

Retillias’s testimony on re-direct, she was asked if she had animosity toward

Defendant and testified:

 [Retillias:] No, most definitely not. And in all -- I mean, I -
 - I wish [Defendant] the best. He knows I -- I hate it. I hate
 this. I hate this, but I have been asked to come here and do
 something that affects my life and affects my children as
 well. And I have to be honest, and that's just is what it is.
 I asked them could I not come and it was a “no” so I had to
 be here. So this is really painful for me to sit here and have
 to just speak, in all honesty, on the situation that occurred
 because I do care for [Defendant]. I care for [Defendant]. I
 care for him. I care for his family. I -- I just can’t believe
 this situation occurred.

 [District Attorney:] Yes, ma’am. I understand. Thank you
 very much.

 [District Attorney]: That’s all the questions I have.

 THE COURT: Recross?

 [Defense Attorney]: No, Your Honor.

 THE COURT: All right. Ma’am, you may step down.

Reading Retillias’s testimony in its entirety, we cannot conclude it is “subject to

serious credibility-related questions[.]” Malachi, 371 N.C. at 738, 821 S.E.2d at 421

(emphasis added). While she was impeached during cross-examination, she

 - 13 -
 STATE V. PIERRE

 Opinion of the Court

answered the questions about her alleged bias head-on and flatly denied having any

bias against Defendant, going as far as to say she cares for him and his family. We

find this testimony remediates the seriousness of any credibility-related questions.

 We are cognizant of the concern that we “should . . . take care to refrain from

conducting [our] own examination of witness credibility issues.” Malachi, 371 N.C.

at 742, 821 S.E.2d at 423 (Morgan, J. dissenting). However, our Supreme Court’s

mandate in Malachi is clear: if we are satisfied the State has presented exceedingly

strong evidence of Defendant’s guilt, we are only to find harmful error where the

evidence is either in dispute or “subject to serious credibility-related questions[.]”

Malachi, 371 N.C. at 738, 821 S.E.2d at 421 (emphasis added. Just as we cannot

conclude the relevant evidence is subject to dispute, we cannot hold Retillias’s

testimony is subject to serious credibility-related questions.

 CONCLUSION

 Assuming arguendo the trial court’s instruction on acting in concert was

erroneous, we cannot conclude that error was prejudicial. The State presented

exceedingly strong evidence of Defendant’s guilt that was neither in dispute nor

subject to serious credibility-related questions. Therefore, our Supreme Court’s

holding in Malachi requires us to hold the trial court committed no prejudicial error.

 NO PREJUDICIAL ERROR.

 Judges DIETZ and COLLINS concur.

 - 14 -