IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-686

Filed: 15 December 2020

Sampson County, Nos. 15CRS51092, 051148

STATE OF NORTH CAROLINA

v.

JONATHAN CONLANGES BOYKIN

Appeal by defendant from judgments entered 12 June 2018 by Judge Ebern T. Watson III in Superior Court, Sampson County. Heard in the Court of Appeals 18 February 2020.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Neil Dalton, for the State.*

*Gilda C. Rodriguez, for defendant-appellant.*

STROUD, Judge.

Defendant was found guilty by a jury of felony speeding to elude arrest, felony habitual driving while impaired and two counts of attaining the status of habitual felon, one based on the speeding to elude arrest conviction and one based upon the habitual driving while impaired conviction. Defendant's appeal focuses on the judgment convicting him of felony speeding to elude arrest and because the jury was not instructed on the definition of an essential element of the crime of speeding to elude arrest and the evidence on this issue was in conflict, defendant must receive a

new trial for speeding to elude arrest. Accordingly, defendant must also receive a new trial on the count of attaining the status of habitual felon which was based upon the felony speeding to elude arrest conviction. Further, we remand defendant's judgment for habitual impaired driving and the attaining of habitual felon status conviction, based upon habitual impaired driving, for resentencing and clarification.

## I.    Background

The State's evidence showed that in mid-May 2015, Patrol Officer Christopher Hardison of the Sampson County Sheriff's Office heard a radio communication about "a moped[.]" Officer Hardison then saw a man later identified as defendant riding a moped and followed him. The speed limit was 55 mph, and Officer Hardison testified that he "clocked [the moped] at 50 miles per hour" but failed to "lock this speed in[.]" The speed limit then changed to 35 mph, and Officer Hardison testified the moped was still going 50 miles per hour. Officer Hardison turned on his blue lights to stop the moped for speeding, but it did not stop. The driver of the moped made several turns and ran three stop signs. Much of the chase was recorded. Later that day, the moped was spotted next to a "residence." Officers found defendant nearby and arrested him.

When defendant was arrested, he smelled of alcohol and had red glassy eyes and slurred speech. Defendant refused to submit any field sobriety tests and to provide a breath sample. Officer Hardison obtained a search warrant for a blood

sample from defendant. Defendant was combative during the blood draw and had to be restrained. The results of the blood test showed a blood alcohol level of 0.19. During defendant's trial, the jury was informed of defendant's prior convictions, including impaired driving. Defendant was found guilty of felony speeding to elude arrest, habitual driving while impaired, and two counts of attaining the status of habitual felon -- one count based upon the conviction for eluding arrest and one based on the conviction for habitual impaired driving. Ultimately, the trial court entered judgment on the convictions for eluding arrest and habitual impaired driving, but entered only the count of attaining the status of habitual felon as related to the eluding arrest felony. Defendant appeals.

## II. Felony Speeding to Elude Arrest

Defendant makes two arguments on appeal arising from the definition of a "motor vehicle" for a speeding to elude arrest conviction.

> The essential elements of misdemeanor speeding to elude arrest under section 20–141.5(a) are: (1) operating a motor vehicle (2) on a street, highway, or public vehicular area (3) while fleeing or attempting to elude a law enforcement officer (4) who is in the lawful performance of his duties. N.C. Gen. Stat. § 20–141.5(a).

*State v. Mulder*, 233 N.C. App. 82, 89, 755 S.E.2d 98, 103 (2014). Additionally, two aggravating factors raise the misdemeanor of speeding to elude arrest to a felony. *See id.* For purposes of this appeal, we note that the essential four elements are the same for both misdemeanor and felony speeding to elude arrest. *See generally id.*

A.    Motion to Dismiss

We begin with defendant's last issue in his brief.  At the close of the State's evidence, defendant moved to dismiss the charges against him because "the State has [not] carried its burden in this particular matter[.]"  The trial court denied the motion. Thus, we turn first to defendant's last argument on appeal.  Defendant contends "the trial court erred when it denied . . . [his] motion to dismiss the charge of felony speeding to elude arrest because the evidence was insufficient to support the necessary element that . . . [he] was operating a 'motor vehicle.'" (Original in all caps.)

> The proper standard of review on a motion to dismiss based on insufficiency of the evidence is the substantial evidence test.  The substantial evidence test requires a determination that there is substantial evidence (1) of each essential element of the offense charged, and (2) that defendant is the perpetrator of the offense. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. If there is substantial evidence of each element of the charged offense, the motion should be denied.

*State v. Key*, 182 N.C. App. 624, 628-29, 643 S.E.2d 444, 448 (2007) (citations and quotation marks omitted).  "When ruling on a motion to dismiss for insufficient evidence, the trial court must consider the evidence in the light most favorable to the State, drawing all reasonable inferences in the State's favor."  *State v. Miller*, 363 N.C. 96, 98, 678 S.E.2d 592, 594 (2009).

The State agrees with defendant that operating a "motor vehicle" is an essential element of the crime of felony speeding to elude arrest.  Again,

> [t]he essential elements of . . . speeding to elude arrest under section 20–141.5(a) are: (1) operating a motor vehicle (2) on a street, highway, or public vehicular area (3) while fleeing or attempting to elude a law enforcement officer (4) who is in the lawful performance of his duties. N.C. Gen. Stat. § 20–141.5(a).

*Mulder*, 233 N.C. App. at 89, 755 S.E.2d at 103. Defendant correctly notes a "moped" is specifically excluded from the statutory definition of a "motor vehicle[.]" *See* N.C. Gen. Stat. § 20-4.01(23) (2015).[1] Defendant's offenses occurred in May of 2015, when North Carolina General Statute § 20-4.01(23) defined a "motor vehicle" as "[e]very vehicle which is self-propelled and every vehicle designed to run upon the highways which is pulled by a self-propelled vehicle. *This shall not include mopeds as defined in G.S. 20-4.01(27)d1.*" *Id.* (emphasis added). At the time of defendant's offenses North Carolina General Statute § 20-4.01(27)d1 defined a "moped" as "[d]efined in G.S. 105-164.3." N.C. Gen. Stat. § 20-4.01(27)d1 (2015).

North Carolina General Statute § 105-164.3(22) defined a "moped" in May of 2015 as "[a] vehicle that has two or three wheels, no external shifting device, and a motor that does not exceed 50 cubic centimeters piston displacement and cannot propel the vehicle at a speed greater than 30 miles per hour on a level surface." N.C. Gen. Stat. § 105-164.3(22) (Supp. 2014). Thus, the statutory definition of a "moped" requires evidence of a vehicle with all the following characteristics:

---

[1] The statutes regarding the definitions of "motor vehicle" and "moped" have since been amended several times. *See generally* N.C. Gen. Stat. Ch. 20 (2019).

(1) two or three wheels,

(2) no external shifting device, and

(3) a motor which

> (a) does not exceed 50 cubic centimeters piston displacement, and

> (b) cannot propel the vehicle at a speed greater than 30 miles per hour on a level surface.

*See id.*

As a general rule, "[t]he state is not called on to prove the negative." *State v. Glenn*, 118 N.C. 1194, 1195, 23 S.E. 1004, 1005 (1896). But in this particular case, the statutory definition of "motor vehicle" has a negative embedded within it since it excludes "mopeds." *See* N.C. Gen. Stat. § 20-4.01(23). Defendant argues the State was required to prove a negative and the motion to dismiss should have been granted because the State did not prove defendant's vehicle was *not* a moped. The State contends it was required to prove only that defendant was operating a "motor vehicle" and defendant would have the burden of proving the exclusion; in other words, defendant would have to argue sufficient evidence that his vehicle was actually a moped as defined by statute as a defense. Indeed, despite the wording of the statute, the State is required to prove an affirmative: that defendant was operating a "motor vehicle." *See Mulder*, 233 N.C. App. at 89, 755 S.E.2d at 103. Thus, to survive a motion to dismiss, the State was required to present evidence that the vehicle

defendant was operating was a "motor vehicle," defined as "[e]very vehicle which is self-propelled[,]" but excluding mopeds. N.C. Gen. Stat. § 20-4.01(23). There is no dispute that the vehicle defendant was operating was self-propelled, and thus we turn to the evidence of "mopeds[.]" *Id.*

Defendant contends that his vehicle was excluded from the statutory definition of "motor vehicle" because it was a "moped," which is specifically excluded by North Carolina General Statute § 20-4.01(23). *See id.* But the State's burden of proof was not to present evidence that defendant's vehicle was a "moped;" its burden was to present evidence defendant was operating a "motor vehicle" and the State's evidence met this burden, so the trial court correctly denied defendant's motion to dismiss. *See generally id.*

Defendant's argument is based primarily on the State's use of the word "moped" to describe his vehicle. At trial, the State consistently referred to defendant's vehicle as a "moped." The State's primary witness, Officer Hardison, used the word "moped" over 50 times in his testimony, referring to defendant's vehicle.[2] But the word "moped" as used in the vernacular is not as technical as the statutory definition. *See generally* N.C. Gen. Stat. § 105-164.3(22). Since the statute defines the term

---

[2] At one point in Officer Hardison's testimony, he stated the speed of 50 miles per hour would make the vehicle a "motorcycle," but unfortunately, Officer Hardison and the State's counsel persisted in using the term "moped."

"moped," that definition controls, despite the vernacular understanding of what a "moped" is. *See generally id.*

> In the construction of any statute, including a tax statute, words must be given their common and ordinary meaning, nothing else appearing. *Where, however, the statute, itself, contains a definition of a word used therein, that definition controls, however contrary to the ordinary meaning of the word it may be.* The courts must construe the statute as if that definition had been used in lieu of the word in question. If the words of the definition, itself, are ambiguous, they must be construed pursuant to the general rules of statutory construction, including those above stated.

*Appeal of Clayton-Marcus Co., Inc.*, 286 N.C. 215, 219–20, 210 S.E.2d 199, 202–03 (1974) (emphasis added) (citations omitted).

The "ordinary meaning" of "moped" generally does not take into account the nature of the "shifting device" or "piston displacement," and Officer Hardison was using the word in the ordinary sense in his testimony. N.C. Gen. Stat. § 105-164.3(22). Despite Officer Hardison's use of the word "moped," where a statute defines a word, the court is required to use the statutory definition. *See Clayton-Marcus Co., Inc.*, 286 N.C. at 219–20, 210 S.E.2d at 202–03. Although it is odd that the State identified the vehicle defendant was operating as a "moped" before the jury over 50 times and now argues before this Court that defendant's conveyance was a "motor vehicle, not [a] moped," the use of the word "moped" in evidence is not conclusive. *See generally id.* The better practice would certainly be for the State and

its witnesses to use the statutory term applicable to the crime, here "motor vehicle." *See Mulder*, 233 N.C. App. at 89, 755 S.E.2d at 103.

Officer Hardison acknowledged that a "moped" could not be a "motor vehicle" during direct examination, but despite the use of the word "moped" the State's evidence did not clearly establish that defendant's vehicle was a "moped" which would be excluded under the statutory definition. Officer Hardison testified: "I activated my blue lights due to the fact that this vehicle was running 50 in a 35, as well as I could obviously tell this was a moped, which is a vehicle that should not have been traveling more than 30 miles per hour because a vehicle traveling at 30 miles per hour as a motor vehicle is anything above 30 miles per hours" and

> [i]n reference to a moped, a moped by the state statute cannot exceed 30 miles per hour. So if it was manufactured as a moped and any -- for any reason or any kind of alterations that could have been done to increase that speed from 31 to whatever it may be, which in this case was 50, that changes the classification of that moped from a vehicle, which is the same thing as a bicycle, a lawnmower, et cetera, it changes that classification to a motor vehicle which requires a valid driver's license, insurance to be on that vehicle, as well as registration to be on that vehicle. Which a vehicle, a moped in itself, at this time did not require any of that.

The testimony continued,

> Q.   But for a legal classification, you're saying it goes from a vehicle to a motor vehicle?
>
> A.   That's correct.

> Q.      And in this case, specifically, when it's not a car, it doesn't make it a car, does it?
>
> A.      No.  It makes it a motorcycle.  Once it goes from the -- beyond the 30 miles per hour, once it hits 31 miles per hour and above, it changes the classification to a motor vehicle which is -- in turn, makes this, with two wheels, a motorcycle.

On cross-examination, Officer Hardison again stated that a moped, as defined by North Carolina General Statute § 105-164.3(22) would not be able to go over 30 miles per hour unless it had been altered.  The maximum speed of the vehicle is one element of the definition of a moped, *see* N.C. Gen. Stat. § 105-164.3(22), and thus a moped should not be able to go as fast as 50 miles per hour on a level surface.  Officer Hardison did not testify if the road was level where he clocked defendant at 50 miles per hour.  Viewed in the light most favorable to the State, as we must for purposes of a motion to dismiss, *see Miller*, 363 N.C. at 98, 678 S.E.2d at 594, the State's evidence showed defendant was operating a vehicle which outwardly appeared to be a moped but could go faster than a "moped" as defined by statute.

On appeal, the State contends it presented evidence defendant's vehicle was going faster than 30 miles per hour, so it met the definition of "motor vehicle" in as would be necessary for a conviction of felony speeding to elude arrest.  *See Mulder*, 233 N.C. App. at 89, 755 S.E.2d at 103.  All the State needed to show to survive the motion to dismiss on the element of "motor vehicle" was to present evidence that defendant was operating a "self-propelled" vehicle.  *See* N.C. Gen. Stat. § 20-4.01(23).

The State's evidence that the vehicle was going over 30 miles per hour could potentially exclude one of the elements of the definition of "moped," although the evidence was silent as to the gradient of the road when the speed was clocked. *See* N.C. Gen. Stat. § 105-164.3(22). Further, no evidence was presented regarding the "shifting device" or "piston displacement" in order to establish that the vehicle was a "moped." *Id.* Ultimately, the State's evidence met the elements of the statutory definition of a "motor vehicle," despite its repeated use of the term "moped," *see* N.C. Gen. Stat. § 20-4.01(27), and defendant's motion to dismiss the charge of felony speeding to elude arrest was properly denied. *See generally Mulder*, 233 N.C. App. at 89, 755 S.E.2d at 103.

B.     Jury Instructions

Defendant also contends "the trial court committed plain error when it failed to instruct the jury on the definition of 'motor vehicle,' which is an essential element of speeding to elude arrest." (Original in all caps.) Defendant notes he did not object to the jury instructions and thus argues for plain error review.

> For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings[.]

*State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citations, quotation

marks, and brackets omitted).

Defendant contends,

> Had the trial court explained the legal definition of
> "motor vehicle" to the jury, there is a reasonable probability
> that the jury would not have convicted Mr. Boykin of felony
> speeding to elude arrest. The State's evidence that was
> presented to the jury was that Mr. Boykin was driving a
> moped when Officer Hardison chased him on May 15, 2015.
> Although Officer Hardison stated that he believed Mr.
> Boykin was driving at a speed in excess of 30 miles per
> hour, he also stated that he failed to lock Mr. Boykin's
> speed with the RADAR device he had that night.
> Moreover, there was no evidence of modifications made to
> Mr. Boykin's moped that would have enabled it to travel
> the speed Officer Hardison alleged and possibly have
> disqualified it as a moped. Lastly, the only source of
> information the jury had on what constituted a motor
> vehicle was from Officer Hardison, the State's witness, who
> may not have been completely accurate or thorough in his
> explanation. In other words, the impartial law on what
> could be characterized as a motor vehicle was absent from
> the jury's deliberation. In light of the evidence, it was
> reasonably probable that the jury would have reached a
> different verdict on the speeding to elude arrest offense.
> The trial court, therefore, committed plain error when it
> failed to define a motor vehicle for the jury and Mr. Boykin
> should receive a new trial.

Thus, using much of the same law as in his argument regarding the motion to dismiss,

defendant contends had the jury been properly instructed as to the full definition of

a "motor vehicle" and the excluded vehicle, a "moped," the jury would have reached a

different result because it would have determined he was operating a "moped" and

not a "motor vehicle." *See generally* N.C. Gen. Stat. §§ 20-4.01(27); 105-164.3(22).

Defendant cites to *State v. Rhome*, wherein this Court found plain error when the

trial court failed to instruct on an essential element of a crime. *See State v. Rhome*,

120 N.C. App. 278, 294, 462 S.E.2d 656, 667–68 (1995) ("It is well established that

the defendant in a criminal action has a right to a full statement of the law from the

court. Failure to specifically charge the jury on every element of each crime with

which the defendant is charged is not error per se, requiring reversal, but reversal is

mandated in such a case if the jury consequently falls into error. Thus, in instructing

the jury, the trial court must correctly declare and explain the law as it relates to the

evidence. Moreover, the rule that instructions are to be confined to the issues applies

in criminal cases. Instructions must be tailored to the charge and the indictment,

and adjusted to the evidence. Accordingly, the jury charge must relate each and every

essential element as alleged in the indictment." ((citations, quotation marks, and

brackets omitted)).

> Further,
>> [t]he question of whether a trial court erred in instructing the jury is a question of law reviewed *de novo*. The standard of review set forth by this Court for reviewing jury instructions is as follows:
>>> This Court reviews jury instructions contextually and in its entirety. The charge will be held sufficient if it presents the law of the case in such manner as to leave no reasonable cause to believe the jury was misled or misinformed. Under such a standard of review, it is not enough for the

> appealing party to show that error occurred in the jury instructions; rather, it must be demonstrated that such error was likely, in light of the entire charge, to mislead the jury.

*State v. McGee*, 234 N.C. App. 285, 287, 758 S.E.2d 661, 663 (2014) (citations, ellipses, and brackets omitted). Defendant notes that Officer Hardison testified the moped was going in excess of 30 miles per hour, but he also admitted he had failed to lock in the speed on the RADAR device. In addition, Office Hardison did not describe the gradient of the roadway; even the statute recognizes that a moped may be able to go over 30 miles per hour downhill. *See generally* N.C. Gen. Stat. § 105-164.3(22).

The State's primary argument on appeal is that it is extraordinarily difficult for defendant to prevail under the plain error standard of review because defendant must demonstrate the jury would probably have reached a different result. We note this issue would likely have been avoided if the State had simply referred to the defendant's vehicle as anything but a "moped," the type of vehicle specifically excluded under the definition of "motor vehicle." *See* N.C. Gen. Stat. § 20-4.01(27). The State now contends,

> Given the unequivocal and [uncontradicted] testimony by Officer Hardison that he clocked the defendant at 50 miles per hour on radar, there can be no doubt that the defendant's vehicle met the definition of motor vehicle, not moped, since the officer's reading on radar was 50 miles per hour, which is not close to 30 miles per hour.

But there is some doubt. Even the fact noted as dispositive here by the State – speed – is not conclusive as there was no testimony that the surface was level. *See* N.C. Gen. Stat. § 105-164.3(22). In addition, the definition of "moped" includes elements other than speed. *See id.*

Properly instructed, a jury could have determined based on the evidence that defendant was not operating a "motor vehicle" but instead was operating a "moped." *See* N.C. Gen. Stat. §§ 20-4.01(27); 105-164.3(22). Often, due to the substantial evidence in trial, it is obvious that any errors in instructions had little or no probable impact on the jury's verdict, but that is not the case here. The State consistently and repeatedly used the term "moped" to describe defendant's vehicle, but the trial court did not instruct the jury on the definition of "motor vehicle" and the specific exclusion of a "moped" from that definition.

We conclude that without any instructions regarding the definition of "motor vehicle," including the statutory exclusion of a "moped," it "was likely that, in light of the entire charge," the jury was "misled or misinformed[,]" *McGee*, 234 N.C. App. at 287, 758 S.E.2d at 663, particularly since the State's evidence used the word "moped" to describe defendant's vehicle. We further conclude that "the error had a probable impact on the jury's finding that the defendant was guilty." *Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334. Defendant must receive a new trial on the speeding to elude arrest charge.

Without the speeding to elude arrest conviction, defendant's conviction for attaining the status of a habitual felon based on that felony must be vacated for a new trial. *See generally State v. Allen*, 292 N.C. 431, 435, 233 S.E.2d 585, 588 (1977) ("Being an habitual felon is not a crime but is a status the attaining of which subjects a person thereafter convicted of a crime to an increased punishment for that crime. The status itself, standing alone, will not support a criminal sentence. The habitual criminal act does not create a new and separate criminal offense for which a person may be separately sentenced but provides merely that the repetition of criminal conduct aggravates the guilt and justifies greater punishment than ordinarily would be considered." (citation, quotation marks, and ellipses omitted)).

Defendant makes two other arguments on appeal. The first argument is a double jeopardy issue regarding the felony speeding to elude arrest that he requests we invoke Rule 2 to consider. We decline to do so at this time as double jeopardy is a protection against twice being convicted or punished for the same offense, *see generally* U.S. Const. amend. V; N.C. Const. art. I, § 19, and defendant is now receiving a new trial for one of the convictions he contends is at issue. The remaining argument is as to a clerical error regarding the punishment class for the judgment for habitual impaired driving, and the State concedes this judgment may contain an error. We remand the habitual impaired driving judgment and remand for the trial court to address the clerical error on appeal and also the attaining the status of

- 16 -

habitual felon conviction based upon the underlying felony of habitual impaired driving upon which defendant was convicted but, per our record, judgment was never entered upon nor arrested.

## III.    Conclusion

Defendant must receive a new trial on the charge of felony speeding to elude arrest and attaining the status of habitual felon conviction based on that charge. This result leaves intact the habitual impaired driving conviction and the habitual felon status based upon that conviction but due to the clerical error and the lack of any judgment regarding the habitual felon status conviction based upon the habitual impaired driving, we remand for the trial court to address the punishment class and both charges. In summary, we vacate the judgment in 15CRS50192 (speeding to elude arrest and habitual felon) for a new trial, and we remand for resentencing in file number 15CRS051148 (habitual impaired driving and habitual felon).

NEW TRIAL in part and REMANDED.

Judges INMAN and YOUNG concur.