IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-275

Filed 7 January 2026

Haywood County, No. 23CR232603-430

STATE OF NORTH CAROLINA

v.

EARL MITCHELL PHILLIPS

Appeal by Defendant from judgments entered 10 July 2024 by Judge William T. Stetzer in Haywood County Superior Court. Heard in the Court of Appeals 15 October 2025.

*Attorney General Jeff Jackson, by Assistant Attorney General Megan Shook, for the State-Appellee.*

*Drew Nelson for Defendant-Appellant.*

COLLINS, Judge.

Defendant Earl Mitchell Phillips appeals from judgments entered upon a jury's verdicts of guilty of assault with a firearm on a law enforcement officer, stalking with a court order in effect, and resisting a public officer. Defendant argues that the trial court erred by denying his (1) motion to dismiss the stalking charge due to a fatal flaw in the indictment and (2) request for a specific instruction on the assault charge. Because the indictment sufficiently identifies the crime being charged, the trial court did not err by denying Defendant's motion to dismiss. And because the requested

jury instruction was not supported by the evidence, the trial court did not err by refusing to give the requested jury instruction. We find no error.

## I. Background

Defendant was indicted on 6 March 2023 on the charges of assault with a firearm on a law enforcement officer, felony stalking with a court order in effect, and resisting a public officer. The initial indictment alleged that Defendant committed the offenses on 11 February 2023, and the stalking charge in the indictment alleged that Defendant

> unlawfully, willfully and feloniously did . . . knowingly on more than one occasion harass Christopher Berghout and/or Jaime Berghout without legal purpose, and/or did knowingly engage in a course of conduct directed at Christopher Berghout and/or Jaime Berghout without legal purpose, as the case may be.
>
> At the time of this offense, Defendant knew and should have known that the harassment and/or the course of conduct would cause a reasonable person to fear for that person's safety and fear for the safety of that person's immediate family, and/or Defendant knew and should have known that the harassment and/or course of conduct would cause a reasonable person to suffer substantial emotional distress by placing that person in fear of death, bodily injury, and/or continued harassment.
>
> Also at the time of this offense, there was a valid court order in effect prohibiting this conduct . . . , entered . . . on December 19, 2022 in Haywood County, North Carolina, and Defendant had knowledge of this order.

Prior to trial, Defendant filed a motion to dismiss the stalking charge in the indictment, arguing it was fatally defective. The trial court found that Defendant

had sufficient notice of the stalking charge and denied the motion. On the first day of trial, the State moved to amend the date of the stalking charge in the indictment from 11 February 2023 to a date range of 7-11 February 2023; the trial court granted the motion. Defendant did not move for a bill of particulars.

The evidence presented at trial tended to show the following:

Christopher and Jaime Berghout moved to Haywood County in the fall of 2019 and met Defendant and his wife shortly after their arrival. Defendant and his wife began stopping by the Berghouts' home uninvited, despite the Berghouts' eventual request that they cease doing so. On 21 July 2020, Jaime filed a report with the Haywood County Sheriff's Office asking law enforcement to communicate to Defendant to stop the unwanted contact, but it continued. Tensions between the Berghouts and Defendant and his wife continued over the next couple of years.

Approximately two years later, in June 2022, Defendant and two other men drove to the Berghouts' home in Defendant's truck and had an altercation with Christopher; Christopher took the first "swing" at one of the men. Christopher was "beaten to a pulp," suffering a broken nose, swollen eyes, and bruises and cuts across his body. Defendant and the two other men got back into Defendant's truck; Defendant then drove his truck into Jaime, who was standing in front of it. Jaime suffered severe bruising on her thigh and arm from "where the vehicle struck [her]."

Defendant was arrested, and a magistrate entered a "conditions of release and release order" the following day. As a condition of his release, Defendant was ordered

to have no contact with Jaime. Defendant and the two other men later pled guilty to simple assault on Christopher. On 19 December 2022, a district court judge in Haywood County entered a judgment against Defendant for simple assault. The special conditions of his probation included a no-contact order, prohibiting Defendant from assaulting, threatening, harassing, being in or on the premises or workplace of, or having any contact with Christopher and Jaime Berghout. The no-contact order further ordered Defendant

> not to be within 100 yards of Berghout's residence located at 47 Whistle Ridge Road, and stay off Whistle Ridge Road. If traveling on Dick's Trail, do not stop, slow down, or otherwise harass Berghout if traveling on the portion of Dick's Trail which borders Berghout's property; Defendant is allowed to go directly to and from his well.

The no-contact order was effective for eighteen months, until 19 June 2024. A redacted copy of the judgment including the no-contact order was admitted as State's Exhibit 2 and published to the jury.

On 7 and 8 February 2023, Christopher called 911 because he saw Defendant "driving by, slowing down, [and] staring" at the Berghouts' home. Christopher's recorded 911 calls were admitted as State's Exhibits 28 and 29 and published to the jury. Christopher also recorded one video of Defendant slowly driving by the Berghouts' home on 7 February 2023 and one video of Defendant sitting inside his truck near the Berghouts' home on 8 February 2023. Those videos were admitted as State's Exhibit 30 and published to the jury.

Christopher testified that Defendant had driven on Dick's Trail on 8 February 2023 "at least half a dozen times" and that, when he approached Defendant to write down his license plate, Defendant stopped driving and asked Christopher about his daughter. Christopher further testified that a few days later, on 11 February 2023, he heard gunshots in his backyard; when he shined a light outside, he saw Defendant. Jaime called 911, and her recorded 911 call was published to the jury.

Deputy Wood and Deputy Elkins with the Haywood County Sheriff's Office were dispatched to the Berghouts' home that night and arrived shortly before 9:00 p.m. Both deputies testified that it was dark and raining a little bit, and that they were wearing their standard uniforms, which included their vests, stars, nameplates, sheriff's office badges, and duty belts. Deputy Elkins was also wearing a black sheriff's office raincoat, which had a reflective Haywood County Sheriff's Office badge and two shoulder insignias. The deputies drove separately, and both drove marked patrol cars with their headlights and overhead light bars activated. When Deputy Elkins parked his marked patrol car, his headlights and overhead light bars shined on Deputy Wood's marked patrol car and illuminated the words "Sheriff" and "Haywood County Sheriff." Photographs of Deputy Wood's marked patrol car were admitted as State's Exhibits 31 and 32 and published to the jury for illustrative purposes.

Upon the deputies' arrival at the Berghouts' home, Christopher told Deputy Wood that Defendant had been behind his home "shooting off rounds" in his backyard.

The deputies looked for Defendant near his home on Elkhound Road and found him sitting in his truck parked on the road. The deputies approached Defendant's truck; Deputy Wood approached on the driver's side, and Deputy Elkins approached on the passenger's side. Deputy Wood could not tell if Defendant's eyes were open or closed because Defendant was looking towards the steering wheel. Deputy Elkins could see Defendant's eyes and that Defendant was "looking at" them as they approached him. Deputy Wood greeted Defendant loudly, stating either, "Hey, Mr. Phillips, it's me, Deputy Zach Wood" or "Hey, Mr. Phillips, it's me, Deputy Wood, with the Haywood County Sheriff's Office." At this point, Defendant lifted his head, extended his arm, and pointed a revolver at Deputy Wood's "upper chest, neck, face area."

In response, both deputies drew their weapons, shined flashlights into Defendant's eyes, and ordered Defendant to drop his revolver. Defendant "slowly" set his revolver down in his lap when commanded to drop the weapon, and Defendant replied that "he would point his gun at whoever he wanted." Deputy Elkins confiscated Defendant's revolver; it was admitted as State's Exhibit 33 and published to the jury.

Deputy Wood ordered Defendant out of his truck multiple times, but Defendant verbally and physically resisted. Defendant said that he was not getting out of the truck, braced his hands on the steering wheel, pushed his feet into the floorboard of the truck, and had to be pulled out of his truck through the passenger's side. Defendant then tried to stop the deputies from placing him in the back seat of the

patrol car, and the deputies had to take Defendant to the ground and restrain him. Deputy Elkins found a Miller Lite beer sitting in the center console of Defendant's truck and smelled alcohol on Defendant.

At the close of the State's case, Defendant moved to dismiss the charges against him, and the trial court denied the motion. At the close of all the evidence, Defendant again moved to dismiss the charges against him, and the trial court denied the motion and began conducting a jury charge conference. Defendant requested that the jury instruction for the charge of assault with a firearm on a law enforcement officer include the optional language "without justification or excuse[,]" as provided by North Carolina Pattern Jury Instruction Criminal 208.95. The trial court denied Defendant's request to include this optional language.

On 10 July 2024, the jury found Defendant guilty on all charges. As to the stalking charge, the jury found Defendant guilty of stalking with a court order in effect. It returned special verdicts finding Defendant guilty of stalking both Christopher and Jaime by harassing them on more than one occasion and by engaging in a course of conduct directed at both. The trial court consolidated the convictions for assault with a firearm on a law enforcement officer and resisting a public officer into one judgment, and it sentenced Defendant to 60-84 months' imprisonment. On the conviction for felony stalking, the trial court entered a second judgment, sentencing Defendant to 6-17 months' imprisonment; it then suspended the sentence and placed Defendant on 36 months' supervised probation to begin upon Defendant's

release from incarceration.  Defendant appealed.

## II.    Discussion

Defendant argues that the trial court erred by (1) failing to dismiss the stalking charge because the indictment was fatally defective and (2) "failing to include the 'without justification or excuse' language when instructing the jury concerning the assault charge."

### A.  Indictment

Defendant first argues that the trial court erred by failing to dismiss the stalking charge in the indictment because it "does not include a plain and concise factual statement."

This Court reviews de novo a trial court's decision to deny a motion to dismiss a charge based on a fatal defect in the indictment.  *State v. Stewart*, 386 N.C. 237, 240 (2024).  "Under a de novo review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal."  *State v. Williams*, 362 N.C. 628, 632-33 (2008) (cleaned up).

An indictment must include a "plain and concise factual statement in each count which, without allegations of an evidentiary nature, asserts facts supporting every element of a criminal offense and the defendant's commission thereof" and does so "with sufficient precision clearly to apprise the defendant . . . of the conduct which is the subject of the accusation."  N.C. Gen. Stat. § 15A-924(a)(5) (2024).  The "purposes" of an indictment "are to identify clearly the crime being charged, thereby

putting the accused on reasonable notice to defend against it and prepare for trial, and to protect the accused from being jeopardized by the State more than once for the same crime." *State v. Creason*, 313 N.C. 122, 130 (1985) (citation omitted). "It is generally held that the language in a statutorily prescribed form of criminal pleading is sufficient if the act . . . is clearly set forth so that a person of common understanding may know what is intended." *State v. Coker*, 312 N.C. 432, 435 (1984); *see also State v. James*, 321 N.C. 676, 680-81 (1988) ("The general rule is that an indictment for a statutory offense is facially sufficient if the offense is charged in the words of the statute, either literally or substantially, or in equivalent words.").

Our Supreme Court has clarified the law on indictments in *State v. Singleton*, issued in May 2024. 386 N.C. 183, 184-85 (2024). "[A]n indictment raises jurisdictional concerns only when it wholly fails to charge a crime[.]" *Id.* at 185. "[B]ills of indictment that contain non-jurisdictional deficiencies will not be quashed or cast aside 'by any reason of any informality' when they express the crime charged 'in a plain, intelligible, and explicit manner' such that the defendant has 'notice sufficient to prepare a defense and to protect against double jeopardy.'" *Id.* (citations omitted). While the State has "a duty to draft indictments in a manner that satisfies both statutory strictures and . . . constitutional purposes[,]" "a defendant seeking relief must demonstrate not only that such an error occurred, but also that such error was prejudicial." *Id.* at 210 (cleaned up).

Prior to trial, Defendant moved to dismiss the stalking charge and specifically

argued that *Singleton* could be distinguished from the current case. However, on appeal, Defendant has failed to cite *Singleton* and has failed to argue, much less demonstrate, that he was prejudiced by the alleged error in the indictment. *See id.* Defendant's reliance on an unpublished Court of Appeals case from 2019 and *State v. Duncan*, 30 N.C. App. 112, 114 (1976), to support his argument that the indictment must be quashed is unavailing. Further, we note that, if Defendant did not understand the exact nature of the stalking charge filed against him, he should have filed a motion for a bill of particulars. *See State v. Brown*, 320 N.C. 179, 192 (1987) ("[I]f, despite the sufficiency of the indictment, defendant was at a loss to determine the specific facts underlying the charge[] . . . his proper recourse was to move for a bill of particulars."). For these reasons, Defendant's argument lacks merit.

**B. Jury Charge**

Defendant next argues that the trial court erred by failing to include the "without justification or excuse" language when instructing the jury on assault with a firearm on a law enforcement officer.

This Court reviews de novo a trial court's decision regarding a request for a jury instruction. *State v. McGee*, 234 N.C. App. 285, 287 (2014) (italics omitted). "Under a de novo review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Williams*, 362 N.C. at 632-33 (cleaned up). "[A]n error in jury instructions is prejudicial and requires a new trial only if there is a reasonable possibility that, had the error in question not been

committed, a different result would have been reached at the trial . . . ." *State v. Castenada*, 196 N.C. App. 109, 116 (2009) (cleaned up).

"It is the duty of the trial court to instruct the jury on all substantial features of a case raised by the evidence." *State v. Shaw*, 322 N.C. 797, 803 (1988). A trial court must give a requested jury instruction only if it is "correct in itself and supported by [the] evidence[.]" *State v. Locklear*, 363 N.C. 438, 464 (2009) (citation omitted). "When determining whether the evidence is sufficient to entitle a defendant to jury instructions on a defense or mitigating factor, courts must consider the evidence in the light most favorable to defendant." *State v. Mash*, 323 N.C. 339, 348 (1988).

The North Carolina pattern jury instruction for assault with a firearm on a law enforcement officer states that "[t]he defendant has been charged with assault with a deadly weapon upon an officer of the State" and, for the jury "to find the defendant guilty of this offense, the State must prove four things beyond a reasonable doubt." N.C.P.I.—Crim. 208.95. "First, that the defendant assaulted the alleged victim by intentionally . . . ." *Id.* (emphasis in original). After the word "intentionally," the instruction includes the parenthetical phrase "and without justification or excuse" and a footnote instructing the trial court that the "parenthetical phrase should be used only where there is evidence of justification or excuse, . . ." *See id.* n.3.

Defendant first argues that the trial court should have included the

parenthetical phrase "and without justification or excuse" because he presented an affirmative defense of automatism, or a state of involuntariness, at trial. However, our review of the transcript shows that Defendant agreed during the charge conference that he was not raising any affirmative defenses and instead merely alleged that Defendant was "unaware" of the deputies' identities. Further, Defendant did not present any evidence at trial that he involuntarily pointed his revolver at Deputy Wood, and Defendant even argued that his "motion" of pointing the gun at Deputy Wood was "intentional, but . . . not unlawful." We thus disagree that Defendant presented an affirmative defense at trial. *See State v. Hageman*, 307 N.C. 1, 27 (1982) (determining that "the burden of raising and proving affirmative defenses [is] on the defendant" in a criminal trial).

Further, Defendant's argument that he could have been asleep and thus reacted involuntarily to the deputies is not supported by any record evidence. The only evidence of Defendant's consciousness when approached by the deputies came from the testimony of Deputy Wood and Deputy Elkins. While Deputy Wood testified that he could not tell whether Defendant's eyes were open or closed because Defendant was "looking down towards his lap," Deputy Elkins testified that he saw Deputy Wood shine a light onto Defendant and that he was able to "see [Defendant's] eyes at that time." Deputy Elkins stated that Defendant was "sit[ting] up. He's looking at us as we're making our approach. . . . His eyes were open before we got to the front of the truck."

Deputy Elkins testified that Deputy Wood "loud[ly]" announced their presence and identified himself as a deputy with the Haywood County Sheriff's Office, and both deputies testified that Defendant's arm extended out of the truck while pointing a revolver at Deputy Wood's "upper chest, neck, face area." The deputies then drew their weapons on Defendant and gave Defendant commands "to drop the gun or [they] would kill him." The deputies had to tell Defendant to drop the gun "twice before he put it down[,]" and Defendant responded to Deputy Wood, stating that he "would point it to whoever he wanted to." Defendant then "slowly" lowered the revolver onto his lap. There is no record evidence to support that Defendant was asleep when the deputies approached his truck or that Defendant acted involuntarily when pointing his revolver at Deputy Wood, and we disagree that the deputies' testimony constitutes "conflicting evidence" of Defendant's state of consciousness to warrant the inclusion of the parenthetical phrase "and without justification or excuse."

Even "consider[ing] the evidence in the light most favorable to [D]efendant," *Mash*, 323 N.C. at 348, the record evidence here shows that Defendant was awake when the deputies approached his truck, that he pointed his revolver at Deputy Wood after Deputy Wood "loudly" announced himself, and that Defendant did not lower his weapon when first ordered to do so and only then lowered it slowly; this record evidence does not support Defendant's argument that he did not act voluntarily when he pointed his revolver at Deputy Wood. We thus determine that Defendant's requested jury instruction was not "supported by [the] evidence," *Locklear*, 363 N.C.

at 464, and the trial court did not err by failing to include the parenthetical phrase "and without justification or excuse" in the jury charge.

### III.    Conclusion

For the reasons stated above, the trial court did not err.

NO ERROR.

Judges GORE and STADING concur.